STATE ex rel. THACHER et al., RESPONDENTS, *v.* BOYLE
ET AL., AS THE PUBLIC SERVICE COMMISSION OF
MONTANA, APPELLANTS.

(No. 4,814.)

(Submitted November 3, 1921. Decided December 24, 1921.)

[204 Pac. 378.]

*Prohibition—Public Service Commission—Irrigation Companies
—Public Utilities—Jurisdiction—Statutory Construction.*

Irrigation Companies — Public Utilities — Public Service Commission —
Jurisdiction.
1. *Held,* that an irrigation company organized for the purpose of
supplying water for the irrigation of agricultural lands is not a
"public utility" within the meaning of Chapter 52, Laws of 1913,
and is therefore not subject to supervision and regulation by the
Public Service Commission. (MR. CHIEF JUSTICE BRANTLY and MR.
JUSTICE GALEN dissenting.)

Statutory Construction—Rule.
2. In the construction of a statute every word, phrase, clause and
sentence of the Act must be given meaning if it is possible to do so.

*Appeals from District Court, Ravalli County; Theodore
Lentz, Judge.*

PROCEEDINGS by the State on the relation of George O.
Thacher and others to secure a Writ of Prohibition against
Daniel Boyle and others, as the Public Service Commission, to
prevent defendants from taking jurisdiction over and fixing
annual charges for services performed by the Ravalli Water Com-
pany in furnishing water for irrigation purposes. Judgment
for relators. Defendants appeal from it and from order deny-
ing a new trial. Affirmed.

*Mr. Wellington D. Rankin,* Attorney General, *Mr. E. G.
Toomey* and *Mr. R. F. Gaines,* for Appellants, submitted a
brief; *Mr. Toomey* and *Mr. Gaines* argued the cause orally.

By virtue of its business as conducted by it, the Ravalli
Water Company is a public utility. (See Long on Irrigation,
secs. 4, 130; 1 Wyman on Public Service Corporations, secs.

73, 92; *Ellinghouse* v. *Taylor,* 19 Mont. 462, 48 Pac. 757;
*Helena Power Transmission Co.* v. *Spratt,* 35 Mont. 108, 10
Ann. Cas. 1055, 8 L. R. A. (n. s.) 567, 88 Pac. 773, and 37
Mont. 60, 94 Pac. 681.) And a definite recognition of the fact
that a corporation engaged in the same character of service
as the Ravalli Water Company is a public service corporation
is found in the case of *Bailey* v. *Tintinger,* 45 Mont. 154, 122
Pac. 575. The supreme court of the United States is equally
positive in its declaration that such corporations are public
utilities. (*Fallbrook etc. Dist.* v. *Bradley,* 164 U. S. 112, 41
L. Ed. 369, 17 Sup. Ct. Rep. 56 [see, also, Rose's U. S. Notes];
*Van Dyke* v. *Geary,* 244 U. S. 39, 61 L. Ed. 973, 37 Sup. Ct.
Rep. 483.)

In Colorado and Arizona different views entertained by the
courts respecting the matter of appropriation of water render
decisions from those states concerning the question of whether
canal companies are public utilities of doubtful value; but gen-
erally it may be said that both those states recognize them
to be such.

In Idaho, Washington and Oregon such companies, in efforts
to condemn rights of way for their ditches, have been expressly
recognized as public agencies and subject to regulation and
control by the state in the conduct of their business. (*Wilter-
ding* v. *Green,* 4 Idaho, 773, 45 Pac. 134; *Umatilla Irr. Co.* v.
*Barnhart,* 22 Or. 389, 30 Pac. 37; *Prescott Irr. Co.* v. *Flathers,*
20 Wash. 454, 55 Pac. 635.)

The attitude of the persons in charge of a business is not the
test of whether or not the business is a public utility. (*Van
Dyke* v. *Geary, supra; German Alliance Co.* v. *Kansas,* 223
U. S. 389, L. R. A. 1915C, 1189, 58 L. Ed. 1011, 34 Sup. Ct.
Rep. 612.) "To claim one is not a common carrier because
he has persistently disregarded his duty and has arbitrarily
chosen whom he would serve, notwithstanding that he has in-
vited the public generally to apply, is to make a public duty
determinable by the pleasure of the individual and not by prin-

ciple of law." (*Lloyd* v. *Haugh etc. Co.,* 223 Pa. St. 148, 21 L. R. A. (n. s.) 188, 72 Atl. 516.)

The test recognized with practical unanimity of opinion and expression is, whether the business itself "holds such a peculiar relation to the public interest that there is *superinduced* upon it the right of public regulation." It is the nature of the business and not the desire of its proprietors that controls. (*Munn* v. *Illinois,* 94 U. S. 113, 24 L. Ed. 77 [see, also, Rose's U. S. Notes]; *State Public Utilities Com.* v. *Monarch Refrigerating Co.,* 267 Ill. 528, 108 N. E. 716; *State ex rel. Danciger Co.* v. *Public Service Com.,* 275 Mo. 483, 205 S. W. 36.)

Public Utility Acts have generally been, by the courts, liberally construed as is proper with reference to remedial legislation, and as illustrative of the view of the court we cite the following cases: *State ex rel. Sedalia* v. *Public Service Com.,* 275 Mo. 201, 204 S. W. 497; *Minneapolis, St. P. & S. S. M. R. Co.* v. *Railroad Com.,* 136 Wis. 146, 17 L. R. A. (n. s.) 821, 116 N. W. 905; *State Public Utility Com.* v. *Monarch Refrigerating Co.,* 267 Ill. 528, 108 N. E. 716. ·

*Messrs. O'Hara, Maden & Carmody,* for Respondents, submitted a brief; *Messrs. Murphy & Whitlock,* of Counsel; *Mr. Robt. A. O'Hara* argued the cause orally.

We contend that even though it were admitted that both the present company and its predecessors were public utilities, still this commission has no jurisdiction over them, for the reason that notwithstanding the state has power to regulate public utilities, the power which the state as sovereign delegates to a commission is strictly limited by the statute under which such power is granted, and the statute in this case does not, in the first place, include utilities engaged in the furnishing of water for irrigation, and, in the second place, if it does, it excepts from the jurisdiction of the commission all existing contracts and the admitted facts show that most of the contracts were in existence before the passage of the Act. That the jurisdiction

of the commission is strictly limited by the statute is clearly announced in the case of *Interurban Ry. Terminal Co.* v. *Public Utilities Com.,* 98 Ohio St. 287, 3 A. L. R. 696, 120 N. E. 831; Public Utilities Reports 1919B, p. 212.

Does our statute give the commission jurisdiction over companies engaged in the distribution of water for irrigation purposes? We submit that the legislature did not intend by section 3 of this Act to give the commission jurisdiction over persons or corporations engaged in the furnishing of water for irrigation purposes. The term "irrigation" is not used in the Act, whereas the terms "household use," "sewerage service," "manufacturing" and "business" are used. Irrigation is a term so well known in Montana, and the subject of irrigation is so important in this state, that if the legislature had intended to include it, it would have used the term. Why should it have used the other terms such as "household use" and "sewerage service" and omit irrigation? In view of the specific designation of the various uses referred to in the statute, the term "business" should certainly not be construed in such a broad general sense as to include everything. It is true that the supreme court of this state in *Territory* v. *Harris,* 8 Mont. 140, 143, 19 Pac. 286, adopts the general definition of the word "business" as given by Mr. Webster, and that in a case in no way similar to the present one. We submit that the use of the term "business" in connection with the other specifies terms such as "manufacture" was in a sense synonymous with the word "trade." There is good authority for this contention. (See *Cuzner* v. *California Club,* 155 Cal. 303, 20 L. R. A. (n. s.) 1095, 100 Pac. 868; *State* v. *University Club,* 35 Nev. 475, 44 L. R. A. (n. s.) 1026, 130 Pac. 468; *Easterbrook* v. *Orphan Society,* 85 Conn. 289, 41 L. R. A. (n. s.) 615, 82 Atl. 561; *People* v. *Warden,* 144 N. Y. 529, 27 L. R. A. 718, 39 N. E. 686.) In the next place, assuming the Act does give the commission jurisdiction of such companies, we contend that section 12 of the Act specifically excepts existing contracts. (*Helena Light & Ry. Co.* v. *Northern Pac. Ry. Co.,* 57 Mont.

93, 186 Pac. 702; *Lima* v. *Public Utilities Com.*, 100 Ohio St. 416, 126 N. E. 318; Public Utility Reports 1920C, p. 934; *Ohio River Power Co.* v. *Steubenville*, 99 Ohio St. 421, 124 N. E. 246.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Some time prior to 1908, the Bitter Root District Irrigation Company was organized to irrigate lands in the Bitter Root Valley. It made some appropriations of water and partially constructed a distributing system. In 1908 it failed in business and its properties were taken over by the Bitter Root Valley Irrigation Company, which thereafter purchased 30,000 acres of land in the vicinity, perfected the appropriation of large quantities of water, constructed a reservoir at Lake Como, extended a main canal for some sixty-seven miles and built over 250 miles of lateral ditches. It sold more than 17,000 acres of its lands with perpetual water rights and contracted to furnish each purchaser water for irrigation at a fixed annual maintenance charge of $1.25 per acre. Later this company became bankrupt and its properties were acquired by the Ravalli Water Company, which undertook to carry out the contracts but, finding the revenues derived therefrom insufficient to cover operating expenses, applied to the Public Service Commission of this state to take jurisdiction and fix annual charges for the services to be performed, irrespective of the contract rate. The Public Service Commission having indicated its purpose to assume jurisdiction and determine the question of reasonable rates, this proceeding was instituted to secure a writ of prohibition arresting the proceedings before the commission. Issues were joined and after a hearing, a peremptory writ was issued and defendants appealed from the judgment and from an order denying a new trial.

One question is determinative of these appeals: Is the Ravalli [1] Water Company a public utility within the meaning of Chapter 52, Laws of 1913? If it is, its business is subject to

supervision and regulation by the Public Service Commission. If it is not, the commission has no jurisdiction over it or its operations. The commission is a mere administrative agency created to carry into effect the legislative will. It has only limited powers, to be ascertained by reference to the statute creating it, and any reasonable doubt as to the grant of a particular power will be resolved against the existence of the power. (Collier on Public Service Companies, 404, 405.)

By section 1, Chapter 52 above, a Public Service Commission was created "to supervise and regulate the operations of the public utilities *hereinafter named*," etc. By section 2 the board of railroad commissioners was constituted, *ex officio*, the Public Service Commission. Section 3 provides: "The term 'public utility,' within the meaning of this Act shall embrace every corporation, both public and private, company, individual, association of individuals, their lessees, trustees, or receivers appointed by any court whatsoever, that now or hereafter may own, operate or control any plant or equipment, or any part of a plant or equipment within the state for the production, delivery or furnishing for or to other persons, firms, associations, or corporations, private or municipal, heat, street railway service, light, power in any form or by any agency, water for business, manufacturing, household use, or sewerage service, whether within the limit of municipalities, towns and villages, or elsewhere; telegraph or telephone service, and the Public Service Commission is hereby invested with full power of supervision, regulation and control of such utilities, subject to the provisions of this Act and to the exclusion of the jurisdiction, regulation and control of such utilities by any municipality, town or village."

It is idle to cite authorities defining the terms "public utilities," as those terms are generally understood in common parlance. For the purpose of indicating the extent to which the state should then go in exercising its regulatory powers over public utilities it was competent for the Montana legislature to adopt such a restricted definition of those terms as it

saw fit, and it saw fit to adopt the definition contained in section 3 above and to limit the jurisdiction of the Public Service Commission to the specific subjects therein enumerated. There is not any mention in section 3 of a corporation, company, association or individual engaged in furnishing water for irrigation purposes, and the only contention made, or that could be made, is that the expression "water for business" comprehends water for irrigation. In view of the fact that irrigation has been one of the most prominent subjects of legislation and general consideration by the people in Montana from its organization as a territory in 1864 to the present time, it would impeach the intelligence of every member of the legislative assembly of 1913 to say that in enacting Chapter 52 above, the members could not command language to express the idea of irrigation but were driven to the sorry expedient of using the phrase "water for business" as the best expression available to represent the idea. But resort cannot be had to such a subterfuge. It may be granted that the term "business" is sufficiently comprehensive to include almost any human endeavor, but that it was not employed in that general sense is [2] apparent. It is an elementary rule of statutory construction that every word, phrase, clause and sentence in an Act must be given meaning if it is possible to do so. (*State ex rel. Bitter Root Valley Irr. Co.* v. *District Court,* 51 Mont. 305, 152 Pac. 745.) If the word "business" was intended to have attached to it its broad significance, then the very next word in section 3, "manufacturing," is without any meaning whatever, for no one would contend that business does not include manufacturing. It is perfectly manifest from the use of these words and from the last sentence in the section that the legislature had reference to corporations, associations and individuals engaged in furnishing water to municipalities for sewerage purposes and to business houses, manufacturing establishments, and to the citizens for household use, and that irrigation projects were never in contemplation. But if any doubt could arise as to whether irrigation projects were intended to

be brought under the jurisdiction of the Public Service Commission by the provisions of Chapter 52, that doubt is dispelled by the legislature itself. By an Act of the extraordinary session of the sixteenth legislative assembly (Laws Extra. Sess. 1919, Chap. 13), the Montana Irrigation Commission was created with authority to supervise the sale of water and water rights and contracts to furnish water for irrigation purposes. The authority conferred is limited and the powers to be exercised are particularly enumerated. It is inconceivable that the legislature intended to confer general jurisdiction over irrigation projects upon the Public Service Commission by Chapter 52 above, and then created a separate commission with limited jurisdiction over the same subject by the Act of 1919. Again, the Act of 1919 contains a clause repealing all Acts and parts of Acts in conflict with it. If jurisdiction over irrigation projects was intended to be conferred by Chapter 52, that Act was repealed by the later statute to the extent of any repugnancy between them, and that they are essentially repugnant in their provisions is beyond controversy, if Chapter 52 was intended to confer authority upon the Public Service Commission to regulate the sale and distribution of water for irrigation purposes. It cannot be possible that the legislature intended that two boards should have conflicting jurisdictions over the same subject at the same time. But the Act of 1919 does not repeal any part of Chapter 52 above, for the reason that the two Acts deal with unrelated subjects, Chapter 52 with the named public utilities and the Act of 1919 with irrigation projects exclusively. Since the Ravalli Water Company is not a public utility within the meaning of Chapter 52, the Public Service Commission has no jurisdiction over it or its operations.

The judgment and order are affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER and REYNOLDS concur.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE GALEN: We do not agree with the construction placed on the words "water for business use" as used in section 3 of Chapter 52, Laws of 1913, nor with the conclusions reached by the majority. In our opinion the language employed is broad enough to include water provided for irrigation purposes, and such was the clear legislative intent. The plain words of the statute include as a public utility, subject to the supervision and control of the Public Service Commission, every corporation, both public and private, owning or controlling any plant or equipment within the state for the production, delivery or furnishing of "water for business, manufacturing, household use, or sewage service, whether within the limits of municipalities, towns and villages, or elsewhere." Giving the language employed its natural significance, it is plain that the legislature intended to cover all uses of water by the selection of generic words; and as indicated in the majority opinion, if possible, we are required to give force and meaning to every word, phrase, sentence and section used in the Act, the presumption being that the legislature did not employ language without meaning. (*State ex rel. Smith* v. *Duncan,* 55 Mont. 376, 177 Pac. 248.) Generally, the word "business" means any occupation of man, and man's principal pursuit is agriculture. Agriculture has moved ahead of mining in Montana, and as recent experience has clearly proven, irrigation is indispensable in connection therewith. Webster defines "business" as follows: "That which busies or engages time, attention or labor, as a principal serious concern or interest. Constant employment; regular occupation; any particular occupation or employment habitually engaged in, especially for livelihood or gain." (New Int. Dict., p. 296; *Territory* v. *Harris,* 8 Mont. 140, 143, 19 Pac. 286; 1 Words and Phrases, 2d Series, 531.) If it were not intended to include irrigation under the term "business," the legislature should so have stated. In interpreting the language of the Act, we must imply the usual meaning to the words employed, and

in so doing, irrigation is necessarily included under the general term "business."

It is unbelievable that the legislature would enact a public utility law, when such a law appeared a necessity for the protection of "business," and exclude irrigation companies from the control of the commission chosen to administer the sovereign's rate-making power; and in the absence of language, expressly indicating its exception, we think the Act should be held to include it. To us it appears wholly unwarranted to hold that "water for business use" gives the Public Service Commission the right to regulate rates for the use of water for sprinkling lawns and the irrigation of shrubbery, but does not confer like authority as to water used for the irrigation of farms.

From the record it is clear that the Ravalli Water Company is a carrier of water for delivery to persons owning lands, susceptible of irrigation, for the following uses: Irrigation, stock and domestic purposes, and that it is now engaged in such business. Its business is public in nature, not private, and there is more reason why its rates should be made the subject of regulation by the state than those of companies engaged exclusively in the sale and delivery of water "to municipalities for sewerage purposes, and to their business houses, manufacturing establishments and * * * citizens for household use."

Moreover, section 7 of the Act clothes the commission with plenary authority to bring within its jurisdiction "any other business," other than those mentioned in section 3, which may be considered a public utility. It is thereby provided: "Every public utility engaged directly or indirectly *in any other business* than those mentioned in section 3 of this Act, shall if required by the commission, keep and render separately to the commission, in like manner and form, the accounts of all such other business, in which case *all the provisions of this Act shall apply* with like force to the books, accounts, papers and records of such other business."

To hold that the term "business" does not include farming or agriculture, whereof in this state irrigation is a principal means, is to say that the legislature rejected the primary meaning of the word, for agriculture is the most general occupation or business; so that in our view the statute includes the regulation of the sale of water by the Ravalli Water Company, and other like irrigation companies, as a public utility. In construing this statute, in the case of *State ex rel. City of Billings* v. *Billings Gas Co.*, 55 Mont. 102, 173 Pac. 799, this court speaking through Mr. Justice Holloway, well said: "A consideration of the statute leads to the conclusion that in this enactment the legislature intended to provide a comprehensive and uniform system of regulation and control of public utilities, by a specially created tribunal, through which the state itself exercises its sovereign power." (See, also, *Doney* v. *Northern Pac. Ry. Co.*, 60 Mont. 209, 199 Pac. 432.)

The words employed, the policy of the law, the evils to be remedied, are *indicia* properly to be availed of in determining the scope of the legislative enactment. (*State ex rel. McGowan* v. *Sedgwick*, 46 Mont. 187, 127 Pac. 94; *Johnson* v. *Butte & Superior Copper Co.*, 41 Mont. 158, 48 L. R. A. (n. s.) 938, 108 Pac. 1067; *State ex rel. Carter* v. *Kall*, 53 Mont. 162, 5 A. L. R. 1309, 162 Pac. 385.) "General words should receive a general construction unless there is something in the statute to restrain them. If restraint must be put on general words, it is the duty of the court to put no further restriction on them than the nature of the provision and the subject matter to which it relates necessarily impose." (2 Lewis' Sutherland on Statutory Construction, 2d ed., par. 392, pp. 750, 751.) The Act should be liberally construed, and if any doubt exists with reference to the meaning of words used it should be resolved in favor of the sovereignty of the state, and it is to be remembered that the use of all water for sale, rental, distribution or other beneficial purpose, is declared to be a public use under our Constitution. (Sec. 15 of Art. III.)

And we are not able to agree with the majority that the Act of the extraordinary session of the sixteenth legislative assembly (Session Laws Extraordinary Session of 1919, Chap. 13) indicates the exclusion of irrigation companies from the operation of Chapter 52, *supra,* for that statute is silent upon the subject of rates to be charged for water service, and relates exclusively to irrigation districts and projects; it does not cover companies actually engaged in selling water; it simply prescribes the condition under which they may become established, and is wholly silent with reference to the rates to be charged. In our opinion, these statutes are in complete harmony.

As the plaintiff owns a plant and equipment and is engaged in the furnishing and delivering of water to persons "for business," *i. e.,* for the prosecution of agriculture by the irrigation of land, we think it is properly classed as a public utility, within the meaning of Chapter 52, *supra.*

Rehearing denied February 14, 1922.