JOHN G. CRAWFORD, Plaintiff and Appellant, v. THE CITY OF BILLINGS, et al., Defendants and Respondents.
No. 9579.
Submitted April 18, 1956. Decided May 16, 1956.
297 Pac. (2d) 292.

Messrs. Sandall & Moses, Billings, for appellant.

Mr. George J. Hutton, City Atty., and Mr. James F. Battin, Asst. City Atty., Mr. Arnold A. Berger, County Atty., Messrs. Brown, Sande & Forbes and Mr. Rockwood Brown, Jr., Mr. John J. Cavan, Jr., County Atty., Billings, for respondents.

Mr. Moses, Mr. Charles B. Sande, Mr. Battin and Mr. Hutton argued orally.

THE HONORABLE PHILIP C. DUNCAN, District Judge, sitting in place of MR. JUSTICE DAVIS.

In January of 1936 the county commissioners of Yellowstone County, on petition of at least 60% of the freeholders affected, created rural special improvement district No. 25 for the purpose of installing a water distribution system to serve the people of the area with water obtained from the municipally owned water system of the City of Billings for domestic and agricultural use. As originally created District No. 25 was about three miles long and one-half mile wide lying north of the city and running west, with its easterly parts adjoining the city limits.

After the district's creation the proposed water system was installed with six-inch mains in the easterly half and four-inch mains in the westerly half. Some time later much of the easterly

portion of the district was incorporated into the city and the six-inch mains in location there increased to ten-inch mains or larger, but the remaining pipe was not changed and by far the greater part of it is the four-inch originally installed, the remainder being the six-inch pipe.

Beginning perhaps with the year 1951 severe water shortages developed in that portion of the district remaining outside of the city and serviced by the four-inch lines, particularly during the summer months, becoming so bad that at times there was no water even for cooking or flushing of toilets, not to mention bathing or watering of lawns and other uses. As one of the consequences of this situation the freeholders within what is now rural special improvement district No. 249 in October 1954, petitioned the county commissioners of Yellowstone County for its creation and in December 1954, the county commissioners did create the district in response to the petition. District No. 249 is about two and one-half miles long and five-eighths of a mile wide and includes all of District No. 25 lying outside the city limits of Billings presently serviced with the four-inch mains and some additional land to the west and north of District No. 25. The purpose of this new district is to place two twelve-inch mains parallel to and about two feet north of the two existing four-inch mains, and then transfer the service connections from the four-inch mains to the twelve-inch mains. The twelve-inch mains will extend about a mile west beyond the four-inch mains to the end of District No. 249, but not out of it, and run parallel about three-eighths of a mile apart, as do the four-inch mains. The old four-inch mains will be left in place as not worth salvaging and the city has agreed to secure for the new district the twelve-inch mains and fittings at a cost equal to eight-inch mains and fittings. The water supply itself will come from two new reservoirs and a transmission line now being or to be constructed by the city for its use.

In October of 1954 plaintiff filed with the county clerk of Yellowstone County his protest against the creation of District

No 249 and later and before the institution of this action he filed with the same county clerk his notice of defects or irregularities. Thereafter he brought this action in a representative capacity alleging in his complaint:

"That the said James G. Crawford brings this complaint for himself and in a representative capacity for and on behalf of all persons similarly interested for the reason that said complaint as hereinafter averred is a matter in general and common interest to the taxpayers within Special Improvement District No. 25 and that said parties are too numerous and it would be impractical to bring them all before the above entitled Court; that plaintiff and all persons similarly interested are taxpayers of the State of Montana, are freeholders within the confines of rural special improvement district No. 25 and freeholders within rural special improvement district No. 249 and are residents living within the area known and designated as rural special improvement district No. 249 and are residents living within the area known and designated as rural special improvement district No. 25 and rural special improvement district No. 249 and are water users from the public utility above named and are residents living within the area presently served by said public utility and dependent entirely upon the service and facilities of the said public utility of water."

It appears plainly from uncontradicted evidence that plaintiff is not a resident or taxpayer of the City of Billings; that the only property of his involved in this action is his home situated on a tract of land of five acres located in both districts, abutting on and serviced by the north four-inch main of District No. 25, and situated about 600 feet west of the juncture of the four-inch main with the six-inch main of District No. 25.

Plaintiff's position seems to be (1) the City of Billings has the duty of providing the mains proposed to be installed by District No. 249 and that duty may not be shifted on to a rural special improvement district; (2) benefits must be shown and

they must be of a particular nature to authorize the levy of special assessments.

Respecting the first main position of plaintiff, that is, the duty of the City of Billings, plaintiff argues from a number of views, one of which is that the city, as a public utility, has the duty to provide the mains in controversy, denominating them "main transmission or trunk lines for the dispersion of water for residential use." It is not to be denied that the City of Billings in the operation of a municipal water system is a public utility in most meanings of the phrase, particularly so far as its own inhabitants are concerned, but here plaintiff ignores the fact that District No. 249 is located entirely without the city limits of Billings, and it is not the law that a municipality can be forced to construct mains beyond its corporate limits solely because it is operating a public utility in the shape of a municipal water system, and this is true although it has the power, as Billings does, being a city of over 24,000, to deliver water beyond its corporate limits, by virtue of R.C.M. 1947, section 11-1001. Territorial limit of services supplied is everywhere found. It is not to be denied that a privately owned utility may limit the territory it professes to serve, 73 C.J.S., Public Utilities, section 7, page 998. Laws physical powers, finances, all act to limit. And, as has been asked, what is more natural or proper, in the case of cities, than that the extent or kind of service shall be limited to the boundaries of the city? To hold that a city may be compelled to extend its mains beyond its limits, and then, as a natural result, to serve and maintain them, merely because it is operating a municipal water system could lead to endless difficulties for the city, financial and otherwise, and make it the prey of every unwise or unscrupulous promoter of subdivisions or other enterprises. And, in this connection, it must be borne in mind that here the city is not refusing water, it has the water and is willing to supply it. The question is merely whether it must also furnish the mains. In any analysis of the matter the answer must be no. The city cannot be thus compelled to burden

its public utility, and perhaps itself, by providing conduits to persons who are out of the city's limits and beyond its taxing powers. The most that can be said is that whether such extensions are to be made is purely discretionary with the city. 56 Am. Jur., Waterworks, section 27, page 937; City of Phoenix v. Kasun, 54 Ariz. 470, 97 Pac. (2d) 210, 127 A.L.R. 84; Childs v. City of Columbia, 87 S.C. 566, 70 S.E. 296, 34 L.R.A., N.S., 542; Re City of Laurel, Montana, P.U.R. 1921 D, 817; 43 Am. Jur. Public Utilities and Services, section 47, page 602; 67 C.J., Waters, section 669, page 1194; Greenwood v. Provine, 143 Miss. 42, 108 So. 284, 45 A.L.R. 829; 4 McQuillin, Municipal Corporations (2d Ed.), section 1821, pages 1079-1080; Barr v. City Council of Augusta, 206 Ga. 753, 58 S.E. (2d) 823; Benwood-McMechen Water Co. v. City of Wheeling, 121 W. Va. 373, 4 S.E. (2d) 300; Barrett v. City of Osawatomie, 131 Kan. 50, 289 Pac. 970; Smith v. City of Raceland, 258 Ky. 671, 80 S.W. (2d) 827; Browne v. City of Bentonville, 94 Ark. 80, 126 S.W. 93; 34 Am. Jur., Mandamus, section 199, page 970. Further, to compel the city to make the extensions at a loss would be in violation of the "due process" clauses of the State and Federal Constitutions, Art. III, section 27, of the State Constitution and the 14th Amendment of the Federal Constitution. 16 C.J.S., Constitutional Law, section 698, pages 1466, 1467; see generally, Chicago, etc., Ry. Co. v. Board of Railroad Com'rs, 76 Mont. 305, 247 Pac. 162.

Allied with the question just discussed is the argument of plaintiff, based upon Milligan v. City of Miles City, 51 Mont. 374, 153 Pac. 276, 279, L.R.A. 1916 C, 395, that it is the duty and obligation of the city to install at the city's expense mains necessary to convey water to places where there is a demand for it. The facts of the Milligan case were that Miles City was operating a steam electric plant and had surplus steam wherewith Miles City proposed to heat certain buildings in the city itself and thereby attempt to reap a profit from a product that would otherwise go to waste. The plaintiff attempted to prohibit the contemplated action of the city and the question involved was the *power* of the city to do as it proposed. This

court in that case said in effect that if there was an opportunity to make a profit on the surplus steam the city had a duty to do so, ''provided this is practicable and will provide a source of profit, and provided the expenditure required will not create an indebtedness or permanently impair the income derived from the plant.'' The case did not involve the extending of mains outside of the city and is of itself authority for the proposition that whether or not a city should or should not increase its plant even inside the city depends upon practicability, possibility of profit, creation of debts, and other matters, upon all of which there is no evidence in the instant case, and in any event should be left purely to the discretion of the city council of Billings at least in so far as extensions beyond the city limits are concerned, as here.

Plaintiff further takes the position that the City of Billings owes a duty to provide the mains upon the grounds that District No. 25 originally did provide an adequate water distribution system for itself, but that thereafter the city incorporated and integrated these facilities into its own over-all system and proceeded to and is now supplying additional customers through the same and that this is the cause of the water shortages now suffered by the residents of District No. 25. Plaintiff argues on this from two viewpoints: (1) That the city, by its own actions, having undertaken to deliver the water to the various residents of District No. 25, it, as a public utility, must now see that the service is continuous and sufficient by providing the mains required; (2) that there is a contractual duty in that in the beginning it was agreed that District No. 25 would provide the facilities and the city would provide the water, that this contract was carried out for a while by both sides, but that the city by its own actions, just mentioned, broke the contract and that this self-incapacitation is no excuse and the city must now render itself again capable of performing the contract by providing the mains required.

The answer to all of this is that the contention of plaintiff that the city has incorporated and integrated District

No. 25's system into the city's system and that the supplying of additional customers through the same has been the cause of the water shortage is not supported by the evidence or the findings of the trial court. The evidence is conclusive that the city has supplied all the water that the lines of District No. 25 will hold, that the water users outside of the district have no appreciable effect on the supply of water to those within the district, and that the sole cause of the water shortage is the increased population within the district combined with the smallness of the four-inch lines in the district, which the city protested at the time of the installation in 1936. There is no proof that any use of the lines of the district was made without the permission of the district. The evidence is uncontradicted that the district was paid by all outside users for the connections and use they make of the district's lines, and that the repairs, maintenance and supervision of the district are paid for by the district itself. Consequently, it appears that the city has not incorporated or integrated the district's lines into the city's system any more than has the city been the cause of the water shortage.

We turn now to plaintiff's second main position, that is, regarding benefits. Plaintiff first contends that it is shown that the special improvement assessments are not equalled by the benefits since it is evident that the improvements contemplated are not for the special benefit of District No. 249 and local in nature but for the general benefit of the public. In support of this argument he states that he and other persons affected are all in different positions with regard to their water situation, i. e., plaintiff and others close to the supply now have adequate facilities and plenty of water while others in the district do not, and that some persons in District No. 249 will be able to receive water directly from its lines while others must supply additional facilities; that the purpose of the lines is to serve the public at large, both within and without the district; that the fact that the city has offered to provide twelve-inch pipe to the district at the cost of eight-inch pipe

is evidence that eight-inch lines are sufficient for the district and also evidence that the lines are intended to be used by the city for service beyond the district.

Respecting the statement that plaintiff and other persons ██ affected are all in different positions with regard to their water situations, it is to be said that plaintiff is bringing this suit in a representative capacity on the theory, as alleged in the complaint and admitted in the pleadings, that there is a drastic water shortage in District No. 25, and, further, as later set out in this opinion, plaintiff can only represent persons who are present water users in District No. 25. Thus plaintiff cannot show he is not truly representative, 67 C.J.S., Parties, section 13, page 921, nor can he complain that some one other than himself or those he represents in District No. 249 may not receive a direct special benefit. In any event, respecting this entire contention of the plaintiff, whether or not District No. 249 will create a special benefit accruing to all the plaintiffs is one for the determination of the county commissioners. That is one of the chief purposes of the hearing provided for by R.C.M. 1947, section 16-1604, which provides that the decision of the Board of County Commissioners "shall be final and conclusive," and it can only be set aside upon the ground of fraud or such manifest abuse of discretion as amounts to arbitrary action. Stettheimer v. City of Butte, 62 Mont. 297, 204 Pac. 1039; Ricker v. City of Helena,, 68 Mont. 350, 218 Pac. 1049. Neither fraud nor abuse of discretion was here alleged or proved. Not only did the Board of County Commissioners find that a sufficient benefit will result, but so also did the trial court, and it may be said that an examination of the record shows that the findings are supported by competent evidence. This evidence, contrary to plaintiff's statements, is that plaintiff, as well as all others concerned, now have an inadequate water supply which will be remedied. The evidence is uncontradicted that a twelve-inch main is necessary to serve the district, taking into account either present required fire protection

or the future growth of the district, and the evidence is that the lines will serve only the residents of the district.

Another objection that is made by the plaintiff is that the ▉ evidence is that certain unplatted lands are included within the confines of District No. 249 and that these unplatted lands would have to be platted and then require special improvement districts before the facilities as proposed by District No. 249 could be utilized. In Crutchfield v. Nash, 84 Mont. 556, 276 Pac. 938, 943, the law is stated to be in respect to special assessments, "An assessment cannot be predicated upon future action of the public authorities or future legislation, and hence, if property cannot be benefited by a proposed improvement, unless subsequent work is done for which no provision is made, the property cannot be specially assessed." However none of this is available to plaintiff or to anyone he represents.

In Crutchfield v. Nash, supra, it was conceded that the plaintiffs there would receive no benefit without the formation of further special improvement districts. Here the uncontradicted evidence conclusively shows, and the trial court so found, that all of the water users within District No. 25 will be connected to the water lines proposed to be built without any cost to such persons and without the necessity of forming further special improvement districts. All of the possible plaintiffs in this action are such water users in District No. 25 as appears by the following allegations in his complaint:

"That plaintiff and all persons similarly interested are taxpayers of the State of Montana, are freeholders within the confines of Rural Special Improvement District No. 25, and freeholders within Rural Special Improvement District No. 249 and are residents living within the area known and designated as Rural Special Improvement District No. 25 and Rural Special Improvement District No. 249 *and are water users from the public utility above mentioned and are residents living within the area presently served by said public utility* and dependent entirely upon the service and facilities of the said public utility for water." Emphasis supplied.

Since the plaintiff is representing only persons who are pres- water users in District No. 25, none of the owners of the lands that may have to be platted and organized into additional special improvement districts before being able to utilize the facilities of District No. 249 and secure water therefrom are parties to this action. The upshot of it is that plaintiff is objecting to District No. 249 because he believes somebody else who is not complaining might receive a direct benefit. That the plaintiff may not object to the district because he thinks some other person may not receive a benefit is a proposition too well founded in logic to require citation of authority, but it is well set forth in 63 C.J.S., Municipal Corporations, section 1460, page 1248, where it is stated:

"The validity of an assessment may be questioned only by persons whose rights are prejudiced thereby. Property owners may not complain that assessments against others were for any reason invalid, and the fact that part of the property assessed for an improvement is not benefited thereby may not be urged against an assessment on property benefited." See also Beck v. Holland, 29 Mont. 234, 74 Pac. 410.

As to any contention that exclusion of the unplatted areas would reduce the cost to plaintiff, there is no evidence that such exclusion would have any material effect in reducing such costs, indeed the evidence is that the proposed lines would still, of necessity, be of the same extent and if lands are excluded the cost to plaintiff will be greater.

In connection with the Crutchfield case, supra, and Rush v. Grandy, 66 Mont. 222, 213 Pac. 242, wherein it was further held that a public sewer could not be paid for by a special improvement district, it may be advisable to state that those cases involved the construction of a special statute pertaining only to sewer systems within the city limits, R.C.M. 1921, section 5239, now R.C.M. 1947, section 11-2216, as amended since 1921. The statutes here involved are entirely independent and are found in that part of the Code providing for rural improvement districts, R.C.M. 1947, sections 16-1601 to 16-1632.

Section 16-1601 specifically allows the formation of a rural special improvement district for the purpose of "building, constructing and maintaining * * * waterworks plants, water systems * * * and such other special improvements as may be petitioned for." A water system includes mains consequently a special improvement district is not void merely because it includes mains. Nor can plaintiff object because the assessments are to be made on an area basis, even though some persons may be nearer the improvements than others. R.C.M. 1947, section 16-1611, provides for that method of assessment and it has been upheld by this court in situations similar to the present one. McMillan v. City of Butte, 30 Mont. 220, 76 Pac. 203; Mansur v. City of Polson, 45 Mont. 585, 125 Pac. 1002; Almas v. City of Havre, 70 Mont. 33, 223 Pac. 896.

Such other objections as have been advanced by plaintiff have, we believe, been answered by the foregoing opinion. The judgment is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANGSTMAN, ANDERSON and BOTTOMLY, concur.