THE CITY OF POLSON, a Municipal Corporation, Plaintiff and Appellant, v. PUBLIC SERVICE COMMISSION OF MONTANA, Paul T. Smith, Louis G. Boedecker and Ernest C. Steel et al., Defendants and Respondents.

No. 11665.
Submitted May 13, 1970.
Decided Aug. 3, 1970.
473 P.2d 508.

Christian, McCurdy & Ingraham, Keith McCurdy, argued, Polson, for appellant.

Richard P Heinz and F. N. Hamman, Polson, William E. O'Leary, argued, Helena, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the fourth judicial district, Hon. Jack L. Green presiding, supporting the Public Service Commission of Montana in an action brought by the city of Polson seeking to reverse a decision of the Commission.

In this opinion the city of Polson, Montana, plaintiff and appellant herein, will be called the ''City''. The Public Service Commission of Montana, one of the defendants and respondents herein, will be called the ''Commission''.

In the spring of 1965 the South Shore Corporation, also a defendant and respondent herein, applied to the City for permission to make a six inch ''dry'' tap into the city water supply line in order to activate a fire protection system in the South Shore Inn. The City denied the application on the grounds that the City, as a public utility, did not supply fire protection in that manner outside the city limits. The City also indicated that if the tap were permitted there was a possibility that costly damages would result to the line because it was old and rapidly deteriorating.

It appears from the record that the City entered into an agreement with the Indian Tribal Council whereby the City was to obtain water from the Tribal Council water supply for sale and distribution to its customers within its service area. The service area of the City extends well beyond its city limits and includes the South Shore Inn property. Water is taken from the Hell Roaring Creek water supply about six miles east of Polson and is about 55% of the area's supply. The supply line, a twelve inch wooden pipe built in 1922, from its source proceeds in a westerly direction along the southern end of Flathead Lake towards Polson. About one mile from the city limits it crosses the South Shore Inn property passing within 120 feet of the building; thence on into Polson where it feeds the City's distribution lines and storage tanks. Water from this line does not directly go into two 250,000 gallon storage tanks, but flows directly into the water distribution lines and when there is more

water running into the lines than is used it backs up into the tanks to fill them. In addition to this supply, the City has constructed a 500,000 gallon storage tank which is supplied by a well. Since the Commission and district court hearings in the instant case, the City has installed an additional well and pump system, capable of producing 445 gallons per minute, to further supply the two 250,000 gallon tanks.

When the South Shore Inn was built a fire protection sprinkling system was installed consisting of 161 sprinkling heads. In order to effectively operate this system and to meet insurance underwriter's requirements, the owners installed a six inch tap. The application for this tap was denied by the City.

At the present time, South Shore Inn shares a one inch commercial tap with a neighbor filling station. There are over 100 residential and commercial taps, either one inch or 3/4 inch in diameter, on this twelve inch supply line between the South Shore Inn and the Hell Roaring Creek supply, all of which are outside the city limits. In addition to these 100 plus taps, there are two other taps on the Hell Roaring Creek supply line before it reaches the city limits, one is a two inch tap which serves the cemetery and the other is a three inch tap which serves the golf course.

Following denial by the City to South Shore Inn, several other taps were granted in the same area; however, none were for fire protection. It appears that prior to the request of South Shore Inn there had been no applications for a tap for fire protection purposes.

In January 1966, after repeated attempts to persuade the City to reconsider, the owners of the South Shore Inn filed a complaint with the Public Service Commission of Montana against the Polson city council alleging that it had acted in an arbitrary and capricious manner in denying their application. No action was taken on this complaint until January 24, 1966, when the Commission contacted the City in an attempt to find out why the application was denied.

Following lengthy correspondence with the City, the Commission issued its order No. 3203 on July 7, 1967, directing the City to grant the application. After receipt of this order the City requested a suspension of the compliance date and a public hearing, which was granted and held on August 25, 1967

At the hearing the jurisdiction of the Commission was challenged on the grounds that the City was not a public utility under Section 70-103, R.C.M.1947, because that section does not specifically refer to fire protection service. The Commission rejected this contention on the basis that the City came under the statute because the City was controlling and operating a water plant and equipment for the production and delivery of water for a business purpose, i. e., the Commission found that supplying water for fire protection was a business purpose under the statute.

The Commission also found that the City had filed a water rate schedule with the Commission which, among other things, provided for an $8.00 monthly charge for a six inch fire protection line. Since there was no limitation on this schedule as to what geographical areas it encompassed, the Commission considered the rate applicable to all customers within the City's area of service. Thus, logically, since the utility had set rates to be charged for such service, it must follow that the utility will provide the service. In this respect the Commission found that the City had acted in an arbitrary, discriminatory and capricious manner in denying the application of the South Shore Inn.

Following the hearing and the issuance of the Commission's first supplemental order and during the appeal proceedings, wherein the City appealed the Commission's decision to the district court, the Commission issued a second supplemental order on August 19, 1968, generally affirming its two prior orders. The district court on September 24, 1968 entered its judgment supporting the orders of the Commission in all respects finding them lawful and reasonable in the light of the facts presented. From that judgment the City appeals.

Four issues are presented for this Court's consideration:

1. Did the Commission exceed its statutory jurisdiction in ordering the city of Polson to furnish the South Shore Inn water for fire protection purposes?

2. Is the city of Polson obligated to spend money in order to furnish a six inch fire protection tap from its main supply line to a commercial user whose place of business is outside the corporate limits of the city?

3. Is the order of the Public Service Commission of the State of Montana unlawful and unreasonable?

4. Does the order of the Commission requiring the City to install the requested six inch fire protection tap unlawfully interfere with the right of the City to govern and control the internal affairs of its water department?

Issue No. 1 raises the query of whether the Commission had jurisdiction to consider the complaint of the South Shore Inn and give relief to it.

It is a basic rule of law that the Commission, as an administrative agency, has only those powers specifically conferred upon it by the legislature and in determining those statutory powers this Court must give effect to every word, phrase, clause or sentence therein, if it is possible to do so. Stange v Esval, 67 Mont. 301, 215 P. 807; Campbell v. City of Helena, 92 Mont. 366, 16 P.2d 1; State ex rel. Special Road District No. 8 v. Millis, 81 Mont. 86, 261 P. 885; State ex rel. Thacher v. Boyle, 62 Mont. 97, 204 P. 378.

The Montana Public Service Commission is a creature of statute—sections 10-101 through 70-135, R.C.M.1947. Section 70-103 concerns the regulation of public utilities and provides in part:

"The term 'public utility,' within the meaning of this act, shall embrace every corporation, both public and private, * * * that now or hereafter may own, operate, or control any plant or equipment * * * within the state, for the production, delivery, or furnishing for or to other persons,

firms, association, or corporations * * * water for business, manufacturing, household use, or sewerage service, whether within the limits of municipalities, towns and villages, or elsewhere * * *".

The City urges this Court, in light of the facts of this case, to adopt the position that the Commission had no authority to make its ruling in view of the fact that section 70-103 does not give the Commission power to control public utilities in fire protection matters. The City argues that the case of State ex rel. Thacher v Boyle, 62 Mont. 97, 204 P. 378, supports its position.

In that case a bankrupt irrigation company sold its assets to another company which undertook to carry out the former's contracts. Finding the revenues derived therefrom insufficient to cover operating expenses, it applied to the Public Service Commission to take juridiction and fix annual charges for the services to be performed, irrespective of the contract rate. The Commission indicated that it would take jurisdiction and determine the question of reasonable rates. An action was initiated in district court to secure a writ of prohibition arresting the proceedings before the Commission. From a ruling of the district court an appeal was taken to this court to determine whether the water company was a public utility under section 70-103. This Court held at p. 103, 204 P. at p. 380:

"[T]he legislature had reference to corporations, associations and individuals engaged in furnishing water to municipalities for sewerage purposes and to business houses, manufacturing establishments, and to citizens for household use, and that irrigation projects were never in contemplation * * *."

The City argues since this Court held in *Thacher* that irrigation was not a business under section 70-103, R.C.M.1947, it follows, since fire protection is not mentioned in that section, that it is not a use contemplated by the legislature. We are unable to follow the logic of this argument. The cases have no basis for comparison.

■ The *Thacher* case was only a determination of whether or not irrigation was a business under section 70-103. In the instant case we are concerned with the question as to whether or not fire protection is a business use under section 70-103. Certainly the City would not deny that the South Shore Inn is a business. The enterprise is primarily an operation of a coffee shop, dining room or restaurant, cocktail lounge, and facilities for large banquets and conventions. It serves the public and is in no way connected with the irrigation of crops. In *Thacher* we stated at p. 103, 204 P. at p. 380:

"It is an elementary rule of statutory construction that every word, phrase, clause, and sentence in an act must be given meaning if it is possible to do so * * *".

Therefore the principal question is, subsequent to holding that the South Shore Inn is a business, whether or not fire protection is a business use. We hold that it is

The City alleges in its second issue that even though the city of Polson is authorized by section 11-1001, R.C.M.1947 to furnish individuals and business establishments water outside of its city limits, a user so situated cannot force the City to expend monies in order to furnish a six inch fire protection line, even though that individual and/or business is within the City's service area. In support of this contention the City directs our attention to the case of Crawford v. City of Billings, 130 Mont. 158, 297 P.2d 292.

In that case the county commissioners of Yellowstone County, in 1936, upon the application of 60% of the property owners affected, created a rural special improvement district for the purpose of installing a water distribution system in an area adjacent to the Billings city limits. After two 4 to 6 inch lines were installed they were connected to the Billings water system. Because of water shortages caused by an increase in population along the lines, a new special improvement district was created

in 1954 by the county. This new district was in the same area as the 1936 district and its purpose was to replace the obsolete lines with two twelve inch distribution pipes.

In October of that year, a complaint was filed against the creation of the new district claiming that the City of Billings had the duty of providing the new lines and such duty could not be shifted to a rural special improvement district. Plaintiff was neither a resident nor a taxpayer of the city of Billings; he was the owner of a tract of land within both the 1936 and 1954 special improvement districts.

The district court found that the installation and maintenance of the lines was paid solely by persons within the special district; that the city only kept the lines full of water and in no way contributed to the water shortage. Therefore, the city did not incorporate or integrate the district's lines into its own water system.

In affirming the finding of the district court, this Court said at p. 163, 297 P2d at p. 295:

"* * * the city of Billings in the operation of a municipal water system is a public utility in most meanings of the phrase * * * but here plaintiff ignores the fact that District No. 249 is located entirely without the city limits of Billings, and is it not the law that a municipality can be forced to construct mains beyond its corporate limits solely because it is operating a public utility in the shape of a municipal water system, and this is true although it has the power * * * to deliver water beyond its corporate limits, by virtue of R.C.M.1947, section 11-1001."

Here, the City's contention is that since in *Crawford* it was held a city could not be forced to build mains outside its corporaate limits, the South Shore Inn cannot force the city of Polson to install a tap for fire protection. The *Crawford* decision has no application to the factual situation in the instant case; there the Court simply said that a municipal water system can establish the boundaries of its service area and by virtue of section

11-1001; R.C.M.1947, those boundaries may extend beyond the city's corporate limits upon the city's own initiative. However, a user outside the city's area of service cannot force the city to build water mains beyond its service boundaries.

The South Shore Inn is outside the city limits of Polson, but, as opposed to *Crawford,* it is within the City's area of service. Additionally, the South Shore Inn is not asking for the installation of water mains but is simply requesting to be connected to the service main already in place and within an already established, regulated service area.

The responsibility of a public utility to furnish reasonably adequate and nondiscriminatory service to all customers within its service area is expressly set forth in sections 70-103, 70-105, 70-121, 70-127, 70-128, R.C.M.1947. Polson, as a public utility, has published a rate schedule for fire protection service which is not limited to any particular area or use. In effect, the city of Polson is advertising to all its prospective customers—we will furnish these services for this amount of money and under section 70-127, R.CM.1947, if service is refused, the Public Service Commission may force us to act as requested. Any rule which would limit the jurisdiction of the Commission to utility activities only within city limits could lead to chaos.

The City further alleges that if the tap requested by the South Shore Inn is permitted there is a strong probability substantial damage will result to the main because of its age and deteriorating condition. It alleges the damage would be caused by the flooding of water into the main after the tap was made, which could result in water hammer that could shake the 48 year old wooden pipe to pieces. These allegations may be true, yet the evidence reveals that in one instance this line was actually broken by an excavation machine, the line was shut down, repairs made, and the line put back into service without the envisioned consequences, compared by the City to a nuclear holocaust in its brief before this Court.

474

Even assuming arguendo that the Hell Roaring Creek main is in poor condition and there is a good chance it will be damaged when the tap is made, this is not a sufficient basis for refusal of the South Shore Inn's application. It is the undeniable duty of a public utility to furnish adequate service within its service area. Section 70-105, R.C.M.1947, sets forth this duty in specific language:

"Every public utility is required to furnish reasonably adequate service and facilities."

To permit a utility to deny service on the grounds that its facilities are in poor condition would be condoning actions contrary to the obligations and duties of a public service utility to provide reasonably adequate service through facilities which the public can depend on.

In its third issue on appeal the City contends the order of the Commission is unlawful and unreasonable because it is contrary to the facts and evidence. The City argues it was neither arbitrary, capricious nor discriminatory in its denial, therefore, the order of the Commission was unlawful and unreasonable. The City cites as support for this allegation the fact that the Hell Roaring Creek supply line is old and in an advanced stage of deterioration and a shut down to allow a tap could possibly result in great damage. The City also claims that it was not arbitrary in refusing the tap because it has always maintained the policy of not providing fire protection service in this manner outside the city limits and because it has never granted an application of this type.

Once again we will state the law as it applies to the duty of a public utility to serve its customers:

"Every public utility is required to furnish reasonably adequate service and facilities." Section 70-105, R.C.M.1947.

Thus, the utility must have facilities suitable to furnish services as per its rate schedule. It follows that a utility cannot refuse service simply because its distribution system is in poor

condition and may be further damaged. A refusal on these grounds may be tantamount to a violation of a utility's duty to "furnish reasonably adequate service and facilities".

The City's contention that it does not have to grant the requested tap because it has never granted a similar one in the past is completely devoid of merit. It clearly appears from the record that (1) Polson has never granted such a tap in the past, (2) no application for such a tap has ever been made, (3) the city of Polson has applied for and been granted a rate schedule for fire protection, among other services, and (4) there is no specific limitation for providing fire protection service exclusively within the city limits. Since the City has a rate schedule listing fire protection as a service, it would be unreasonable for it to deny such service on this basis.

The City next contends that in order to provide fire protection service outside the city limits the rate schedule must so specify, and a failure to do so means the schedule only applies to areas within the city limits. However, it admits that all other parts of the rate schedule are applicable to both areas within and without the city limits, because there are no restrictions as to areas of use. Yet the City would still argue to this Court that a different type of reasoning should apply to fire protection rates, i. e., everything is excluded unless it is specifically mentioned. Such a tautological argument is unacceptable and suffice it to say that in the absence of a specific limitation, a public utility's rate schedule applies to its whole area of service.

The City's fourth issue on appeal contends that the Commission does not have the power to make such an order as its order No. 3203 because the order unlawfully interfered with the right of the City to govern and control its own affairs.

The power of the Commission is set forth in Title 70, Chapter 1, R.C.M.1947. Under section 70-121 the Commission has the power to investigate, upon complaint or on its own initiative, any of the rates, tolls, charges and practices of a public utility, and, after a full hearing, make such orders as are just and rea-

sonable. The city of Polson is a public utility as defined by section 70-103 in respect to fire protection service, as this is a business use under that section. The Commission acts in a legislative capacity and in Cascade Cty. Consumers Assn. v. Pub. Serv. Comm'n, 144 Mont. 169, 192, 394 P.2d 856, this Court reiterated the principle that there will be no interference with the orders of the Public Service Commission unless:

"(1)  they go beyond the power constitutionally given; or,

(2)  beyond their statutory power; or,

(3)  they are based upon a mistake of law."

■ This Court has pointed out that it is the legislative function to regulate public utilities and that it can do so through an administrative agency. Also, that the acts of this agency are legislative and not judicial. Billings Utility Co. v. Public Service Com., 62 Mont. 21, 203 P. 366.

■ In Cascade Cty. Consumers Assn. v. Pub. Serv. Comm'n, supra, this Court said at 144 Mont. p. 193, 394 P.2d 868:

"In Montana, the elected officials of the Commission, acting within their constitutional power, and in a legislative capacity, are accountable under their oath of office to the people only, just as are the members of this court, and this court will not interfere so long as they follow the law and the decisions of this court. The forum in which their actions are to be judged is in the minds and consciences of the people, whose servants they are, and who alone can hold them responsible for the manner in which they perform their duties."

As long as the Commission exercises its constitutional powers it makes no difference that the City's control of its water department is interfered with.

Under the circumstances of the instant case, there can be no finding that the Commission abridged any of its duties but rath-

er it complied fully with the statutory provisions as interpreted by this Court. Finding no error, the decision of the district court and the Public Service Commission is affirmed.

MR. CHIEF JUSTICES JAMES T. HARRISON, and MR. JUSTICES CASTLES, HASWELL and DALY concur.