No. 82-340

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

THE MONTANA POWER COMPANY,
a Mont. corp.,

Plaintiff and Appellant,

-vs-

THE PUBLIC SERVICE COMMISSION,
as an agency of the State of Montana,

Defendant and Respondent.

_____

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Peter G. Meloy, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gough, Shanahan, Johnson & Waterman; Ronald Waterman
argued, Helena, Montana

For Respondent:

Eileen Shore argued, Helena, Montana

For Amicus Curiae:

Hon. Mike Greely, Attorney General, Helena, Montana
William H. Mellor, III and Constance F. Brooks,
(Mountain States Legal Foundation), Denver, Colorado

_____

Submitted:   May 12, 1983

Decided:   October 27, 1983

Filed:   OCT 27 1983

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Montana Power Company (Montana Power) appeals from an order of the District Court of the First Judicial District, Lewis and Clark County. The District Court order denied Montana Power's application for a writ of prohibition and affirmed in part an order of the Public Service Commission (Commission), which prohibited Montana Power from proceeding with a proposed corporate reorganization. We reverse the order of the District Court.

The issues presented on appeal are:

1. Can the Commission act summarily without notice or hearing in prohibiting Montana Power from proceeding with the establishment of a holding company while the Commission investigates the proposed reorganization?

2. Does the Commission have the power to prohibit establishment of a holding company by Montana Power during the investigation by the Commission?

3. Does the Commission have subject matter jurisdiction to approve or disapprove the proposed reorganization?

Montana Power has proposed the formation of a new corporation, Montana Energy Company, and the reorganization of Montana Power to be accomplished by a reverse triangular merger. Upon completion of the merger, Montana Energy Company would become the sole shareholder of the common stock of Montana Power. The common shareholders of Montana Power would become shareholders of Montana Energy Company through a share-for-share exchange. Following merger, Montana Power would become a direct subsidiary of Montana Energy Company.

On February 23, 1982, the Board of Directors of Montana Power voted to present the reorganization plan to the shareholders at the annual meeting in May. On the following day, February 24, 1982, Montana Power explained the proposed reorganization to the Commission and advised the Commission that shareholder approval would be sought on May 4, 1982.

On March 1, 1982, the Commission instituted an investigation of the reorganization plan and issued an order

prohibiting Montana Power from implementing the plan until the investigation was completed. The order provided:

"1.   The Commission staff shall hold a prehearing conference at a time and place to be previously noticed to the public through legal advertisements.

"2.   The staff shall, at the prehearing conference review with interested persons, the issues set out in this order.  Interested persons may propose additions or deletions to those issues, as well as suggest procedures to be followed in this Docket.

"3.   The Commission staff shall propose to the Commission, following the prehearing conference, the procedures to be followed and any issues not set out in this Order to be considered in this Docket.

"4.   The Commission staff shall schedule and notice a public hearing to allow this Commission to take testimony and receive public comments concerning issues raised in this Docket.

"5.   The Montana Power Company is prohibited from taking any further steps in preparing for or advancing the establishment of a holding company except for those actions that might be necessary to address the issues raised in this Docket, such as preparation of testimony.

"6.   A copy of this order shall be mailed to the Montana Power Company, the Montana Consumer Counsel and all intervening parties in Docket Nos. 80.4.2 and 81.6.57."  (emphasis added)

The Commission issued this order without notice or hearing, and without any opportunity for appearance by Montana Power. No deadline was specified for the completion of the investigation.  No termination date was prescribed for the order prohibiting action by Montana Power.

Following its unsuccessful attempt to invoke the jurisdiction of this Court, Montana Power filed a complaint in District Court on April 19, 1982, seeking a writ of prohibition or injunction on the grounds that the Commission's stay order was issued absent subject matter jurisdiction and absent power to enjoin.  The District Court issued a preliminary order allowing the shareholder vote on the reorganization plan.  However, the court enjoined implementation of the plan until "ten (10) days after entry of an appropriate judgment."  The shareholders voted and

- 3 -

approved the reorganization plan at the May 1982 shareholders' meeting.

The Commission refused to participate at the subsequent show cause hearing. Commission counsel chose not to present evidence or to cross-examine the three Montana Power witnesses, who testified as to the possible effects of the proposed reorganization. The Commission explained to the District Court that it refused to participate because the question of the Commission's subject matter jurisdiction over the proposed reorganization was still pending before the Commission. The Commission also argued that testimony was not required because the issues raised by Montana Power involved questions of law to be resolved by statutory interpretation. As a result, the evidence submitted for consideration by the District Court and this Court is limited to the uncontradicted testimony of the witnesses for Montana Power.

I.

Can the Commission act summarily without notice or hearing in prohibiting Montana Power from proceeding with the establishment of a holding company while the Commission investigates the proposed reorganization?

The Montana Constitution guarantees equal protection of the laws and due process to all persons. MONT. CONST. art. II, §§ 4 & 17. All persons found within the State of Montana are subject to the jurisdiction of the courts; and corporations are included in the definition of "person." Rules 4A & 4B(1), Mont.R.Civ.P. "A corporation is a 'person' within the due process and equal protection clauses of the Fourteenth Amendment to the U.S. Constitution." Mt. States, Etc. v. Dept. of Pub. Serv. Reg. (Mont. 1981), 634 P.2d 181, 188, 38 St.Rep. 1479, 1487.

The power to act summarily by issuing an order prohibiting action by a utility without a hearing is a

- 4 -

drastic power to be implied only where required for the protection of the public. As noted by James O. Freedman, Professor of Law, University of Pennsylvania:

" . . . The power to act summarily is a drastic and sensitive one, akin to the injunctive power of a court; it is granted to agencies, usually those having the confidence of the legislature, only for the performance of a limited number of tasks. Given the political process by which administrative agencies are brought to birth and the drastic nature of the power to act summarily, it is justifiable to assume that a legislature's failure to delegate summary authority was not inadvertent. Whatever arguments can be made in favor of implying the existence in an agency of particular powers not expressly or precisely delegated, they are not appropriate to the power to act summarily.

"Moreover, any assertion of authority to act summarily potentially presents questions of constitutional dimension, particularly with respect to the limitations summary action may impose in the right to a hearing. By enforcing a requirement of statutory authorization, courts insure that they will confront these questions only when the legislature has focused upon them as a matter of policy and has unambiguously elected to present them." J. Freedman, Summary Action by Administrative Agencies, 40 University of Chicago Law Review at 5-6 (1972) (emphasis added).

When a summary power is expressly granted, it is ordinarily limited to situations where the public risks avoided by the summary action outweigh the intrusions upon legal rights which would normally follow. Even in cases where a statute expressly grants the power of summary action, constitutional rights still must be protected.

Here the Commission acted without notice and without an opportunity for hearing on the part of Montana Power. That type of procedure is in striking contrast to the notice and hearing procedures required in the district courts when restraining orders, preliminary injunctions and permanent injunctions are sought under Title 27, Chapter 19, MCA.

Section 69-3-110(5), MCA specifies:

"In addition to the other remedies provided by this chapter for the prevention and punishment of any violation of the provisions thereof and all orders of the commission, the commission may compel compliance with the provisions of this chapter and of the orders of the commission by proceedings in

mandamus, by injunction, or by other civil remedies."

This section shows the clear legislative intent that the Commission use the court system to seek enforcement by injunction, as distinguished from issuing any injunctive type order on its own part. Procedures to protect constitutional rights to notice and hearing are mandated by Title 27, Chapter 19, MCA, which governs issuance of injunctive orders by the courts.

Our review of the public utility law discloses that the legislature has not specifically addressed the topic with which we are here involved, i.e. corporate reorganization. Chapter 3 of Title 69, covering the regulation of utilities, does not contain any specific procedural requirements regarding notice or hearing. Neither do we find any provision in the Administrative Rules of Montana which authorizes the Commission to make a summary order without notice and opportunity for a hearing.

We have also reviewed Title 27, Chapter 19, MCA, entitled "Injunctions." Chapter 19 does not contain any legislative provision specifically applying to corporate reorganizations. By analogy, however, section 27-19-203, MCA is of assistance. That section applies to an adjudicatory proceeding or formal investigation by the Commission relating to continuation or interruption of service. It authorizes the district court to enter a restraining order prohibiting the parties from acting in the manner complained of until the Commission has rendered its decision. Thus, the legislature has provided for issuance of a restraining order, during the pendency of an investigation, without requiring proof on the merits of the entire case prior to the granting of the order. This is comparable to the present case where the Commission

concluded that Montana Power must be restrained for the protection of the ratepayers pending its investigation.

While section 27-19-201, MCA pertains to injunctions during the course of litigation, subsection (3) allows an injunction when it appears that the adverse party threatens to do some act which will tend to render the judgment ineffectual. This indicates legislative intent that an injunction might be issued in a fact situation comparable to the present case, where the Commission has contended that permitting Montana Power to reorganize would render the Commission's final determination ineffective.

In this case, a conference was conducted by the Commissioners on their own motion without notice to Montana Power. The order initiating the investigation of the extent of the Commission's jurisdiction and the ramifications of the proposed reorganization was issued on March 1, 1982. The order contained provisions as to a prehearing conference, procedures during investigation, and a public hearing. Montana Power was ordered not to take any steps in advancing its reorganization plan. The duration of this prohibition was not specified in the order. Counsel informed this Court during oral argument that the Commission's investigation had not been completed and no date had been set by the Commission for its final decision. The restraint on Montana Power has been in effect for over a year and a half. The response of the Commission to questioning regarding the restraint was to challenge Montana Power to show that damages had resulted from the restraint. Apparently the Commission does not feel any constitutional rights of Montana Power have been infringed.

Having found no authority in either the Montana Code Annotated or the Administrative Rules of Montana in support of the Commission's power to issue, without notice or

hearing, an order prohibiting certain conduct for an indefinite period, we look to case law. This is an issue of first impression in Montana.

As Justice Frankfurter observed, fairness of procedure is "due process" in the primary sense.

> "Due process is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process.
>
> . . .
>
> ". . . The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed, the protection implicit in the office of the functionary whose conduct is challenged, the balance of hurt complained of and good accomplished - these are some of the considerations that must enter into the judicial judgment." Anti-Fascist Committee v. McGrath (1951), 341 U.S. 123, 163, 71 S.Ct. 624, 644, 95 L.Ed. 817, 849 (Frankfurter, J., concurring).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge (1976), 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32, citing Armstrong v. Manzo, (1965) 380 U.S. 545, 552, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62, 65. The notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests. Walker v. Hutchinson City (1956), 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178, 182.

Administrative agencies are not exempt from the constitutional restraints of due process requirements. Long ago the United States Supreme Court recognized that due process protections cannot be compromised based on an assertion that expediency was necessary.

> "Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings

- 8 -

their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' of a fair and open hearing be maintained in its integrity. The right to such a hearing is one of 'the rudiments of fair play' assured to every litigant by the Fourteenth Amendment as a minimal requirement. There can be no compromise on the footing of convenience or expediency, or because of a natural desire to be rid of harassing delay, when that minimal requirement has been neglected or ignored." Ohio Bell Tel. Co. v. Comm'n. (1937), 301 U.S. 292, 304-05, 57 S.Ct. 724, 730-31, 81 L.Ed 1093, 1101-02 (citations omitted).

Due process rights in an action involving a public utility commission were considered in Southwest. Bell Tel. Co. v. Public Util. Com'n (Tex.Civ.App. 1981), 618 S.W.2d 130. The Texas Public Utility Commission issued a summary order, without hearing, ordering a utility company to cease conducting a certain experiment pending an evidentiary hearing on whether the Commission had jurisdiction to prohibit the experiment. In preparation for the experiment, the utility had notified the Commission of its plan, expended large amounts of money and transfered employees.

As is the case here, the Commission's summary order was challenged when the utility filed an action for injunctive relief and declaratory judgment on the ground that the Commission lacked authority to issue the summary order. On appeal, the appellate court reversed the trial court and held that the legislature had not given the Commission power by implication to enter, without prior hearing, orders that prohibit any conduct by a public utility. The Court noted that the entire tenor of the Texas Administrative Procedure Act was antithetical to any power in the Commission to issue summary orders that substantially affect legal rights or duties.

"The grant of such power is ordinarily limited to situations where the public risks avoided by summary action outweigh the unconstitutional invasions that would normally follow. Even when such a justification exists, the power to act summarily and without prior hearing and adjudication must be directly, expressly and clearly given by the Legislature to the agency." Southwest. Bell, 618 S.W.2d at 134.

We note that the Utility Commission appealed to the Texas Supreme Court, which dismissed the case upon being advised that the cause had become moot. We cite the appellate court's decision for its factual similarity to the instant case and its legal analysis. We note that the Texas Supreme Court vacated both the trial court's and the lower appellate court's opinions "without regard to the merits of the cause or the views expressed in the opinion of the court of civil appeals." Public Util. Com'n v. Southwest. Bell Tel. Co. (1981), 623 S.W.2d 316.

The grant of summary power should be limited to situations where the public risk to be avoided by the summary action outweighs the limitation placed on the constitutional rights of the parties. Here there was no time problem. The order of the Commission was dated March 1, 1982. Protection, if any, was needed against the next step in the reorganization process, the stockholders' vote of approval scheduled for May 4. The Commission had more than sufficient time to proceed to court had it chosen to do so. Other than the claimed need for protective action, the Commission has advanced no justification to explain its disregard of the due process rights of the utility.

As pointed out by Justice Frankfurter in McGrath, due process is not a yardstick but a delicate process involving the exercise of judgment, which requires a balancing of the hurt complained of and the good accomplished. The Commission has completely failed to demonstrate a hurt which requires summary action on its part without regard to the

- 10 -

constitutional due process rights of the Montana Power Company. We have found no statute, regulation, administrative rule or case from which to conclude that the Commission may suspend due process protections where, in the opinion of the Commission, doing so would be in the public interest.

We hold that under the facts of this case the Commission disregarded the due process rights of Montana Power in issuing its summary order without notice or hearing.

II.

Does the Commission have the power to prohibit establishment of a holding company by Montana Power during the investigation by the Commission?

In general, property devoted to public use or to a use in which the public has an interest can be controlled by the public for the common good. State ex rel. Mt. States T. & T. Co. v. District Court (1972), 160 Mont. 443, 447, 503 P.2d 526, 529. In Montana, public utilities are regulated by the Public Service Commission through the exercise of powers granted by the Legislature. "[T]he Commission is a creature of, owes its being to, and is clothed with such powers as are clearly conferred upon it by statute." Great Northern Utilities Co. v. Public Service Com'n. (1930), 88 Mont. 180, 203, 293 P. 294, 298. The Commission has no inherent common law powers. City of Polson v. Public Service Commission (1970), 155 Mont. 464, 473 P.2d 508.

> "It has only limited powers, to be ascertained by reference to the statute creating it, and any reasonable doubt as to the grant of a particular power will be resolved against the existence of the power. Collier on Public Service Companies, 404-405." State v. Boyle (1921), 62 Mont. 97, 102, 204 P. 378, 379 (emphasis added).

Section 69-1-102, MCA defines the role of the Commission:

"A public service commission is hereby created, whose duty it is to supervise and regulate the operations of public utilities . . .. Such supervision and regulation shall be in conformity with this title."

Legislative intent that the Commission supervise and regulate public utilites in conformity with Title 69 is reiterated in section 69-3-102, MCA:

"The commission is hereby invested with full power of supervision, regulation, and control of such public utilities, subject to the provisions of this chapter . . .."

While full power of supervision, regulation and control of utilities is granted to the Commission, the legislature has provided that this power does not include judicial powers. Section 69-3-103(1), MCA, provides:

"In addition to the modes of procedure hereinafter prescribed in particular cases and classes of cases, said commission shall have power to prescribe rules of procedure and to do all things necessary and convenient in the exercise of the powers conferred by this chapter upon the commission; provided that nothing in this chapter shall be construed as vesting judicial powers on said commission . . ." (emphasis added).

The Commission claims implied power to enjoin the reorganization of Montana Power, pending investigation, under the legislative grant of "full power of supervision, regulation, and control" in section 69-3-102, MCA. The Power Company argues that the Commission exceeded its authority by issuing an order, on its own motion without notice or hearing, enjoining Montana Power from implementing its decision to reorganize.

The Commission's right to regulate rates and to supervise services is undisputed. See sections 69-3-108 and 69-3-301 through -330, MCA. The scope of the Commission's jurisdiction over corporate reorganization and the existence of Commission power to enjoin sua sponte are at issue here.

Since no statutory provision expressly authorizes Commission involvement in corporate reorganization or in the

formation of new corporations, we look to Title 69, Chapter 3, MCA as a whole, to determine the scope of the Commission's powers. Part 1 of Chapter 3 defines "public utility" and the Commission's general powers; Part 2 specifies the requirements under which public utilities must function; Part 3 sets forth the Commission's ratemaking procedures; and Part 4 defines procedures for review of Commission actions.

Section 69-3-106(1), MCA, entitled "Supervision of Management of Public Utilities," defines the legislature's grant of general investigatory powers to the Commission:

> "The commission shall have authority to inquire into the management of the business of all public utilities, shall keep itself informed as to the manner and method in which the same is conducted, and shall have the right to obtain from any public utility all necessary information to enable the commission to perform its duties."

Subsection (2) of this statute permits the Commission to inspect books and records and to examine officers, agents and employees of the utility. Subsection (3) authorizes the Commission to order production of records. Both parties here agree that section 69-3-106, MCA authorizes the Commission to investigate Montana Power's proposed reorganization and determine how the reorganization might affect future rates and services.

Section 69-3-110, MCA is significant in that it specifies the manner in which public utility law is to be enforced by the Commission:

> "(1) The commission shall inquire into any neglect or violation of the laws of this state by any public utility . . .. The commission shall enforce the provisions of this chapter and report all violations thereof to the attorney general.
>
> "(2) All rates, fares, charges, classifications, and joint rates fixed by the commission shall be enforced and are prima facie lawful from the date of the order until changed or modified by the commission or in pursuance of part 4. All rules, practices, and services prescribed by the commission shall be enforced and enforcement actions shall be brought pursuant to the provisions of part 4 until the rules, practices, or services

- 13 -

are changed or modified by the commission upon a satisfactory showing being made.

"(3) Upon the request of the commission, it is the duty of the attorney general or the prosecuting attorney of any county to aid in any investigation, prosecution, hearing, or trial had under the provisions of this chapter and to institute and prosecute all actions or proceedings necesary for the enforcement of this chapter.

"(4) Any forfeiture or penalty herein provided shall be recovered and suit thereon shall be brought in the name of the state in the district court of any county having jurisdiction of the defendant. The attorney general shall be the counsel in any proceeding, investigation, hearing, or trial prosecuted or defended by the commission, as also shall any prosecuting attorney selected by the commission or other special counsel furnished the commission in any county where such action is pending.

"(5) In addition to the other remedies provided by this chapter for the prevention and punishment of any violation of the provisions thereof and all orders of the commission, the commission may compel compliance with the provisions of this chapter and of the orders of the commission by proceedings in mandamus, by injunction, or by other civil remedies." (emphasis added)

Legislative intent that the Commission use the court system is clear.

Refusal to comply with a commission order, issued pursuant to section 69-3-106, MCA, subjects the utility to liability for a fine. The fine is to "be recovered in a civil action" in which the Commission would be the complaining party. Section 69-3-206(2), MCA. Here legislative intent that the Commission utilize the court system is again obvious, since a civil action can only be commenced by filing a complaint with the court. Rule 3, Mont.R.Civ.P.

Other remedies provided for in Part 2 ("Requirements of the Public Utilities") of Chapter 3 include: (1) a civil action to recover penalty payments for failure to make reports or permit examination of utility records (section 69-3-208, MCA); (2) a civil action to recover penalty payments for violation of safety regulations (section

- 14 -

69-3-207, MCA); and (3) court enforcement of penalties for violations of "any lawful requirement or order made by the commission or any court" (section 69-3-209, MCA). Legislative intent that the Commission use the court system to enforce its requirements, regulations and orders is evident from the language of sections 69-3-206(2) and -207(2), both of which provide:

> "Such fine shall be recovered in a civil action upon the complaint of the commission in any court of competent jurisdiction."

It is anomalous to suggest that the Legislature granted to the Commission implied power to enjoin a corporate reorganization while requiring the same Commission to go to court in order to collect a $100 fine.

The enforcement provisions (sections 69-3-110, 69-3-206, -207 and -209, MCA) do not specifically extend the Commission's power to inquire into management, as defined in section 69-3-106, MCA. None of these provisions authorizes or suggests that the Commission should enforce its orders by temporary restraining order or injunction issued by the Commission itself.

Part 3 ("Ratemaking Procedures") of Chapter 3 provides for the filing of schedules of rates, tolls and charges, review by the Commission, and processing of complaints from the public. Section 69-3-321(1), MCA permits the Commission to investigate any complaint made against a public utility by a person or entity that is "directly affected" by the utility's rates, tolls, charges, schedules, regulations, measurements, practices, acts or service. Section 69-3-324, MCA authorizes the Commission to initiate an investigation without a formal complaint by an affected party:

> "The commission may at any time, upon its own motion, investigate any of the rates, tolls, charges, rules, practices, and services and after a full hearing as provided in this part may make by

- 15 -

order such changes as may be just and reasonable, the same as if a formal complaint had been made."

Again, this initiation of investigation is limited to rates, tolls, charges, rules, practices and services.

In Part 4 ("Review of Commission Actions"), the legislature authorized district courts to issue injunctive relief from commission orders and to review the reasonableness and lawfulness of such orders. Like the enforcement provisions in Parts 1 and 2, the review provisions of Part 4 refer the parties to the court system. Section 69-3-402, MCA specifies who may seek relief from commission orders. Section 69-3-403(1), MCA authorizes the district courts to review such orders and to issue injunctive relief upon a proper showing:

> "Any party in interest, being dissatisfied with the order of the commission fixing any rate, fare, charge, classification, or joint rate or any order fixing or prescribing any rule, practice, or service, may apply to the district court for an injunction, staying and suspending the operation of the order of the commission pending the final determination of the reasonableness and lawfulness of said order in the courts. Upon proper showing an injunction shall be issued by such court." (emphasis added)

Sections 69-3-110(5) and 69-3-403(1), MCA are the only statutes in the "Regulation of Utilities" chapter of Title 69 that deal with the subject of injunctions. As noted above, neither of these statutes grants authority to the Commission to enjoin utilities. Both statutes direct the parties to the district court. The Commission's standing to seek civil remedies and its ratemaking authority are the only tools specifically provided by statute as methods by which the Commission may supervise, regulate and control utilities.

Section 69-3-102, MCA invests the Commission with "full power of supervision, regulation, and control" of public utilities. The Commission, therefore, has discretion in choosing the means by which it will accomplish its functions.

- 16 -

It does not, however, have limitless power or legislative prerogative. Having analyzed the scope of the powers statutorily granted to the Commission, we find no basis for respondent's contention that the legislature, by implication, has given the Commission power to prohibit corporate reorganization by its own order.

The legislature's intent that the Commission, public utilities and affected parties use the courts is expressed in all four parts of Chapter 3 of the Public Utilities Act. Use of the court system provides a necessary check and balance. The legislature has provided a procedural framework that should not be abandoned merely because the matter to be investigated by the Commission was not specifically addressed by the legislature.

Excepting orders prohibiting termination of service pending hearing on a consumer complaint, nothing in Chapter 3 indicates legislative intent to grant to the Commission broad power to issue injunctions or orders of that type. On the contrary, those sections that deal specifically with the subject of injunctions expressly direct the Commission to the district courts.

In addition, the legislature has specified that, upon motion of the Consumer Counsel, interested persons or their legal representatives, a district court may enter a restraining order prohibiting a utility from engaging in a certain course of conduct pending a formal investigation. Such a restraining order may become an injunction for the duration of the proceeding before the Commission. Section 27-19-203, MCA. Although this section applies to "continuation or interruption of service," it illustrates clear legislature intent that the Commission apply to the court for restraining orders and injunctions, rather than issue such orders itself.

In summary, the legislature has concluded that the Commission does not have judicial powers and has consistently set forth its view that enforcement of the Public Utilities Act by the Commission is to be sought through court injunctions or other court process. The Commission argues that the possibility of irreversible or irreparable harm to ratepayers warranted its conduct in prohibiting further action by Montana Power and that it is reasonable to infer such apower in order to protect the ratepayers. That argument disregards the remedies which are granted to the Commission. As previously mentioned, section 69-3-110(5), MCA provides that the Commission may compel compliance with the provisions of the chapter by injunction from the district court.

On March 1, 1982, the Commission was advised of the reorganization plan. The next step in that reorganization plan was to submit the question to the Montana Power stockholders on May 4, 1982. This left ample time for the Commission to proceed to seek an injunctive order. Following appropriate notice to Montana Power and a hearing at which the Commission could present evidence showing the possibility of irreversible and irreparable harm from the corporate reorganization, the District Court could properly have issued an injunction, if the evidence were sufficient to move the discretion of the court to restrain further steps in the reorganization.

We conclude that the statutes of Montana do not expressly or by implication confer upon the Commission the power to restrain or enjoin the establishment of a utility holding company during investigation. The Commission has failed to show any need for its exercise of such a summary power. Adequate means for prohibition and restraint are provided in the court system. We further conclude that the

reasonable doubt as to the grant of the summary power to the Commission will be resolved against the existence of the power. We hold that the Commission does not have the summary power by its own order to prohibit or restrain reorganization during its investigation.

## III.

In the hearing before the District Court, no evidence was submitted in behalf of the Commission, or otherwise, showing any factual need for the prohibition or restraint. The only evidence submitted was that in behalf of Montana Power. Had the Commission chosen to submit evidence to substantiate its contentions, it might have been appropriate for the District Court to enter an order restraining the implementation of the reorganization. In the absence of a factual basis for such a conclusion, the order of the District Court cannot be sustained. Ironically, the District Court ruled that it had no factual basis on which to exercise its own injunctive powers; yet, it concluded that the Commission had power to enjoin without a demonstrated factual basis and affirmed the Commission's stay of the reorganization. We hold that the District Court should have granted the writ of prohibition against the Commission.

## IV.

The last issue is whether the Commission has subject matter jurisdiction to approve or disapprove the proposed reorganization. We recognize that this question is the central issue in the proceeding taking place before the Commission pursuant to its order of March 1, 1982. We therefore conclude that it would be premature for this Court to attempt to rule on that issue. That issue will not be ripe for our consideration until the decision by the Commission in its own proceeding and subsequent proceedings in the District Court. We therefore do not rule on Issue 3.

The judgment of the District Court is reversed and the cause is remanded for the entry of an appropriate writ of prohibition against the Public Service Commission.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
Justices

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

I respectfully dissent from all aspects of the majority's opinion. It is abundantly clear to me that if the Public Service Commission's statutory powers are to be at all meaningful, the Commission must have the authority to issue orders deemed essential for exercising those powers. The March 1, 1982, order by the Commission, which prohibits Montana Power from implementing its proposed reorganizational plan pending an investigation by the Commission of the plan and its effects, is such an order.

Granted, there is no express statutory provision giving the Commission the power to issue, without notice or hearing, that order. But we should not strictly limit the Commission's powers to those expressly granted. The legislature can not possibly foresee every circumstance under which the Commission will exercise its express powers. Therefore, we have previously, and should continue to recognize that the legislature has also, by implication, given the Commission the powers required to carry out its express powers.

> "But the powers which an officer, commission or department may exercise are not confined to those expressly granted by the Constitution or statutes of the state. 'In addition to powers expressly conferred upon him by law, an officer has by implication such powers as are necessary for the due and efficient exercise of those expressly granted, or such as may be fairly implied therefrom. But no power will be implied other than those which are necessary for the effective exercise and discharge of the powers and duties expressly conferred.' (46 C.J. 1032.)" Guillot v. State Highway Commission (1936), 102 Mont. 149, 153-154, 56 P.2d 1072, 1074.

To reaffirm this holding would not be contra to any case wherein we have held the Commission to be granted only those powers expressly conferred upon it by the legislature. See for example City of Polson v. Public Service Commission

- 21 -

(1970), 155 Mont. 464, 473 P.2d 508. We would not be giving the Commission new powers, as such. Rather, we would be giving it the tools needed to implement the powers expressly conferred upon it. " . . . no powers will be implied other than those necessary for the effective exercise and discharge of the powers and duties expressly conferred." State ex Rel. Dragstedt v. State Board of Education (1936), 103 Mont. 336, 338, 62 P.2d 330, 331-332.

The powers expressly conferred upon the Commission are broad. Section 69-3-102, MCA, gives the Commission the power to supervise, regulate and control public utilities. Section 69-3-108, MCA, and Part 3 of Chapter 3, Title 69, MCA, give the Commission the specific authority to supervise, regulate and control the services provided and the rates implemented by public utilities. Section 69-3-324, MCA, permits the Commission to initiate its own investigation of "any of the rates, tolls, charges, practices, and services" of a public utility. And finally, section 69-3-106(1), MCA states:

"Supervision of management of public utilities. (1) The commission shall have authority to inquire into the management of the business of all public utilities, shall keep itself informed as to the manner and method in which the same is conducted, and shall have the right to obtain from any public utility all necessary information to enable the commission to perform its duties."

The Commission wishes to investigate, pursuant to section 69-3-324, MCA, the effects of Montana Power's proposed reorganization on its rates and services. It is undisputed that the Commission is expressly granted the authority to do so. It should also be undisputed that in order for such an investigation to be meaningful, any reorganization by Montana Power must be stayed, pending completion of the investigation. Otherwise, the results of

the investigation might very well be moot, and the powers expressly bestowed upon the Commission rendered useless.

For example, an investigation without such an order may disclose that the reorganization will adversely affect Montana Power's rates and services, but that the reorganization has already resulted in a holding company which insulates the individual companies from the Commission's control. The people of Montana would then lack any recourse against the adverse rates and services. Surely the legislature did not intend such a consequence.

> "When 'one devotes his property to a use in which the public has an interest, he in effect grants to the public an interest in that use, and must submit to be controlled by the public for the common good to the extent of the interest he has thus created.'" Great Northern Utilities Co. v. Public Service Commission (1930), 88 Mont. 180, 205, 293 P. 294, 298, quoting Lord Chief Justice Hale, and approved by the Supreme Court in German Alliance Ins. Co. v. Lewis (1914), 233 U.S. 389, 34 S.Ct. 612, 58 L.Ed. 1011.

The majority considers the proper recourse for the Commission to be the judicial system. Again, I cannot agree. Section 69-3-110(5), MCA, sets forth when the Commmission may seek judicial action:

> "(5) In addition to the other remedies provided by this chapter for the prevention and punishment of any violation of the provisions thereof and all orders of the commission, the commission may compel compliance with the provisions of this chapter and of the orders of the commission by proceedings in mandamus, by injunction, or by other civil remedies."

The Commission has no standing to seek judicial action here because, unlike the examples cited in the majority opinion, the purpose of this order is not to compel compliance with any provision of Chapter 3, Title 69, MCA, nor is it to compel compliance with any order issued by the Commission. Its purpose is merely to stay Montana Power's reorganization, pending an authorized investigation by the Commission.

Even if the Commission did have standing to seek a judicial remedy, none of the judicial remedies would be appropriate. In order to obtain a preliminary injunction or a restraining order, the Commission would have to present evidence showing the possibility of irreversible or irreparable harm due to the reorganization. Section 27-19-201(2), MCA. If the Commission could have done that, there would have been no need for the freeze order because the investigation would have been practically complete. In addition, a temporary restraining order would be of no benefit to the Commission because it would last only ten days.

I must also take exception with the majority's statement that the Commission's order is actually a judicial order and therefore inappropriately issued by an administrative agency.

A four-part test has been adopted by the state of Washington to distinguish legislative-type activities from judicial actions.

> (1) Whether the court could have been charged in the first instance with the responsibility of making the decision the administrative body must make;
>
> (2) Whether the function the administrative agency performs is one that courts have historically been accustomed to performing and had performed prior to the creation of the administrative body;
>
> (3) Whether the action involves the application of existing law to past or present facts for the purpose of declaring or enforcing liability rather than reflecting a response to changing conditions through the enactment of a new law of prospective application.
>
> (4) Whether the action resembles the ordinary business of courts as opposed to that of legislators or administrators.

Francisco v. Board of Directors (1975), 85 Wash.2d 575, 537 P.2d 789; reaffirmed in Standow v. City of Spokane (1977), 88

Wash.2d 624, 564 P.2d 1145, appeal dismissed 434 U.S. 992, 98 S.Ct. 626, 54 L.Ed.2d 487.

Under this test, the order of the Commission is clearly not judicial and the Commission did not exceed the limits of its powers in issuing it. I find:

1. The Commission has the initial responsibility for determining whether actions by public utilities affect their rates or services.

2. The courts have never performed that function, except to review any initial administrative decision by the Commission.

3. There has been no declaration or enforcement of liability. This is an order which would be applied prospectively. Therefore, it is more a legislative action than a judicial action. Strumsky v. San Diego County Employees Retirement Ass'n (1974), 112 Cal.Rptr. 805, 520 P.2d 29.

4. The action clearly resembles that of administrators.

The foregoing responds to that which is set forth in the majority opinion for the guidance of counsel in these proceedings, or, in other words, to the dictum. The holding of the majority is that the Commission disregarded the constitutional due process rights of Montana Power when it issued its summary order without notice or hearing.

Due process rights attach when any person is deprived of life, liberty or property. A corporation is included in the term "person". "The right to carry on a lawful business is a property right; due process requires that it not be unreasonably or unnecessarily restricted. U.S. Const., Amend. XIV, Sec. 1; 1972 Mont. Const. Art. II, Sec. 17." (emphasis supplied) Billings Assoc. Plumbing, Heating &

Cooling Contractors v. State Board of Plumbers (1979), 602 P.2d 597, 600, 36 St.Rep. 1996, 1998-1999.

Montana Power has failed to show that its right to carry on a lawful business has been unreasonably or unnecessarily restricted. That right has not been restricted. Montana Power remains free to carry on its business as it has for years, pending completion of the Commission's investigation. Further, there has, as yet, been no determination that Montana Power's proposed reorganization is legal. Therefore, Montana Power could not possibly have proved that the temporary stay of its reorganization restricted its right to "carry on a lawful business." Since the Commission's order does not restrict a protectible interest, no notice or hearing was required prior to the issuance of the order.

Finally, with respect to the due process issue, I reemphasize that the order merely requires Montana Power to maintain its management system "as is", pending completion of the Commission's investigation. The purpose of the investigation is to determine whether the Commission has jurisdiction over Montana Power's proposed reorganization. Exercise by an agency of its power to determine its jurisdiction does not require a hearing. Marshall v. Able Contractors, Inc. (9th Cir. 1978), 573 F.2d 1055.

The opinion of the majority, with inadequate legal bases, essentially strips the Commission of any ability to effectively exercise the powers expressly granted it by the legislature. The majority opinion reserves to another day the issue of whether the Public Service Commission can ultimately stop the reorganization. I predict that issue will become moot by reason of fact accomplished. If reorganization prevents the P.S.C. from examining the price Montana Power Company pays its subsidiary for coal then the

Montana ratepayer will be the loser and the court system will have sanctioned the victimization.  I will not be a party to this result.

Justice

Honorable Michael H. Keedy, District Judge, sitting in place of Mr. Justice John C. Sheehy, dissenting:

I would affirm the decision of the District Court. The March 1, 1982 order of the Public Service Commission prohibited Montana Power Company from implementing its reorganization plan pending an investigation by the Commission to determine whether it would have jurisdiction over the plan. Under these circumstances, the order was a proper exercise of the Commission's regulatory authority.

The Montana legislature has invested the Commission "with full power of supervision, regulation, and control of (Montana Power), subject to the provisionsof (Chapter 3 of Title 69, MCA) . . ." Section 69-3-102, MCA. Provisions of Chapter 3 give the Commission specific powers of regulation and control over services provided and rates imposed by Montana Power. See sections 69-3-108 and Part 3 of Chapter 3, Title 69, MCA. On the other hand, it may not have the power to correct or to neutralize a utility's abuses of its corporate, managerial rights if the reorganization proposed has already taken place. Because this corporate plan has the potential to irreparably impair Montana Power's services, or to insulate decisions bearing upon power rates from the control and supervision of the Commission, and because these potential effects are clearly within the Commission's regulatory authority, an investigation before the fact is proper, warranted, and also within the Commission's authority.

The Commission by its order has not substituted or attempted to substitute its own judgment for that of Montana Power's Board of Directors, as no decision regarding corporate reorganization has been made by the Commission. When such a decision is made, if it is, Montana Power can then seek judicial relief from any claimed harm. In the meantime, however, the Commission must be allowed to exercise its regulatory authority in the first instance to determine the nature and extent of any adverse impact which the reorganization as proposed would have upon rates or services, and the scope of its own jurisdiction in regulating, controlling, or even prohibiting corporate endeavors if harmful effects can fairly be anticipated, and are determined to be material.

As indicated, the investigation would result only in a determination of whether the Commission has jurisdiction over Montana Power's reorganization plan. It is a well-established principle of law that an administrative agency has the right and duty, in the first instance, to determine the extent of its own jurisdiction over actions by companies which come under its reach. Marshall v. Burlington Northern, Inc. (9th Cir. 1979), 595 F.2d 511; Marshall v. Able Contractors, Inc. (9th Cir. 1978), 573 F.2d 1055.

Allowing Montana Power to proceed with its reorganization while the Commission investigates to determine its jurisdiction could result in a holding company structure which would insulate the utility's rates and services from further review by the Commission. The Commission's statutorily-granted regulatory powers would thereby be rendered totally useless. Without the authority to stay the reorganization pending its "jurisdiction" investigation, the Commission is stripped of any ability

it might otherwise have to control Montana Power for the common good.

> "Public service 'commissions are generally em-
> powered to, and are created with the intention
> that they should, regulate public utilities
> insofar as the powers and operations of such
> utilities affect the public interest and welfare.'
> 64 Am.Jur.2d, Public Utilities,§232, p. 740."
> Northwestern Bell Telephone Co. v. Hagen
> (N.D. 1975), 234 N.W.2d 841, 845.

To reiterate, the Commission's order assists in the implementation of its right to determine whether it has juris-diction over Montana Power's reorganization. The Commission has not sought unlimited authority over Montana Power's manage-rial decisions, nor does the District Court's decision confer any such authority upon the Commission. Rather, the Commission is merely attempting to effectively exercise its authority, under section 69-3-106(1), MCA, to inquire into the management of the business of Montana Power.

The exercise of that authority would be an empty ceremony if, while such an inquiry were being conducted, the Commission could not prohibit execution of the proposed management decision. This is particularly true where the decision, once made, may become incapable of being reversed by the Commission and may have permanent and deleterious effects upon the utility's rates and services.

Finally, Montana Power has neither alleged nor demonstrated any irreparable harm as a result of the Commission's order. No actual changes in the reorganization plan can be mandated by the Commission without a full hearing, after which Montana Power could seek judicial relief from any claimed harm. Sections 69-3-324 through 69-3-326, MCA. Thus, Montana Power's due process rights were not violated by the Commission's order

and will be fully protected in the future.

The March 1, 1982 order by the Public Service Commission was in furtherance of the Commission's responsibility to protect "future, as well as present, consumer interests."  In re Permian Basin Area Rate Cases, 390 U.S. 747, 798, 88 S.Ct. 1344, 1376, 20 L.Ed.2d 312, 353-354; reh. den. 392 U.S. 917, 88 S.Ct. 2050, 20 L.Ed.2d 1379 (1968).  It should be upheld.

Michael H. Keedy
September 29, 1983

Mr. Justice Daniel J. Shea, dissenting:

I agree generally with the views of Justice Morrison expressed in his dissent, and also in general with the views of Judge Keedy. I also add my own views in dissenting from the majority opinion stripping the Public Service Commission of its implied powers to maintain the status quo until a decision on the question of subject matter jurisdiction has been made.

The majority decision on the issues raised is baffling. In deciding issue 1, the contention that the Commission could not issue the restraint without notice and hearing to the power company, the majority impliedly holds that the Commission does have the power to issue an order of restraint if it complied with the procedural safeguards of notice and hearing. For if the Commission could not issue a temporary order of restraint, notice and hearing would be an idle act. But then the majority decides just the opposite on issue 2, the question of whether the Commission does have authority to issue a temporary order of restraint. Here the majority holds that the Commission has no such authority. If that is the case then any notice or hearing given pursuant to an assumption that the Commission had the authority would be an idle act indeed. The majority's ruling on issue 2 means that the Commission, once it gave notice and had a hearing, could not follow through with an order of restraint. And to further confuse the issues, on issue 3 the question of whether the Commission had subject matter jurisdiction to approve or disapprove the proposed reorganization, the majority has, by invoking the rule that an administrative agency should first be given the opportunity to rule on its

own jurisdiction, has declined to rule. The result is administrative chaos.

The majority decision leaves the Public Service Commission stripped of authority to maintain the status quo pending its decision of whether it has subject matter jurisdiction. The horse may well be out of the barn if the Commission later rules it has subject matter jurisdiction and enters an order prohibiting the reorganization. The majority suggests that the proper avenue for the Commission is to go to court and obtain a temporary restraining order. But, as Justice Morrison points out, the Commission can go to court to obtain a restraining order only if one of the parties under its jurisdiction refuses to obey its order. Here the Montana Power Company obeyed the order of restraint but at the same time challenged that order in court. Had the Montana Power Company proceeded with its reorganization efforts in violation of the Commission's order, then the Commission could have gone to court to obtain a temporary restraining order.

If this Court refuses to rule on the primary question of whether the Public Service Commission has subject matter jurisdiction, but instead leaves the matter initially for the decision of the Public Service Commission, then the Commission should not at the same time be stripped of the means for maintaining the status quo before it reaches its decision. But that is precisely what has happened here.

The Public Service Commission has at least temporarily assumed jurisdiction over the question of whether it has the authority to approve of or disapprove the proposed reorganization. To effectuate this temporary assumption of jurisdiction it has told the Montana Power Company not to

reorganize until the Commission has investigated the effect of the reorganization on the rate making and regulatory process. Because this Court has refused to rule on the question of subject matter jurisdiction, we must at this point assume that the Public Service Commission does have that jurisdiction and that it has simply taken the steps to maintain the status quo pending its investigation. This Court should not at this juncture, strip the Public Service Commission of the means of maintaining the status quo pending the outcome of its investigation. The powers of the Commission to maintain the status quo must of necessity be implied if the Commission is to have meaningful regulatory powers.

Because the Commission's order is simply one of maintaining the status quo pending its investigation and final determination, which includes a question of whether the Commission will hold that it has subject matter jurisdiction, I fail to see how the Montana Power Company had a right to notice and hearing before the order maintaining the status quo was issued. The Commission does not have jurisdiction over the Montana Power Company on a case by case basis. Rather, it has continuing jurisdiction over the Montana Power Company in administering the regulatory process, and this act was simply one of continuing this jurisdiction. Furthermore, I fail to see any harm to the Montana Power Company because of this claimed failure to give notice and an opportunity to be heard. It has participated fully in all proceedings before the Commission.

From the time the Commission issued the order maintaining the status quo until the present time, the Montana Power Company has been fully participating in the

Commission's investigation, and has apparently been fully cooperating with the Commission. Surely the Montana Power Company has availed itself of every opportunity to let its views be known to the Commission.

Based on these views, I would affirm the order of the trial court and let the Public Service Commission's order remain in effect at least until it has decided for itself the question of whether it has subject matter jurisdiction. If the Commission rules it does have subject matter jurisdiction, and if the Commission further rules that the Montana Power Company cannot reorganize, I have no doubt that the case will once again thread its way through the court system. But I would wait for that to happen and not in the meantime deprive the Commission of its implied authority to maintain the status quo before it reaches a decision on the question of subject matter jurisdiction.

Despite my views on the issues, it appears now that by the majority opinion, the Public Service Commission will be compelled to file an action in District Court asking for a temporary restraining order to remain in effect pending the Commission's ruling. This approach, however, will only bog down the process for any aggrieved party could appeal to this Court from any action that the District Court might take.

_Daniel J. Shea_
Justice

- 35 -