No. 00-437

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 365

303 Mont. 393

15 P. 3d 935

JOHN McFERRAN,

Petitioner and Appellant,

v.

CONSOLIDATED FREIGHTWAYS,

Employer/Insurer and Respondent.

APPEAL FROM: Workers Compensation Court, State of Montana

The Honorable Michael McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Patrick R. Sheehy, Halverson, Sheehy & Plath, P.C., Billings Montana

For Respondent:

Leo S. Ward, Browning, Kaleczyc, Berry & Hoven, P.C., Helena, Montana

Submitted on Briefs: November 9, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Claimant, John McFerran, filed a petition in the Workers' Compensation Court for the State of Montana in which he sought total disability benefits. His employer, Consolidated Freightways, asserted that he was still employable, and therefore not permanently totally disabled. The Workers' Compensation Court concluded that, pursuant to § 39-72-116(24), he did not qualify for total disability benefits. McFerran appeals this conclusion. We reverse the judgment of the Workers' Compensation Court.

¶2 We conclude that the following issue is dispositive:

¶3 Did the Workers' Compensation Court err when it concluded that McFerran was not totally disabled because he could perform duties of a part-time pharmacy delivery driver?

## FACTUAL BACKGROUND

¶4 John McFerran is 57 years old. He graduated from high school at age 20 and joined the Army. While in the Army, he was sent to Korea to work as a chauffeur for government officials and Red Cross nurses. After two years in the Army, he worked at various jobs including railroad work and at a sugar refinery. During this period, he received his Teamsters card. In 1972 Consolidated Freightways hired him to be a hostler and delivery driver. He was employed by Consolidated for the next 26 years. As a hostler, he worked in the truck terminal in Billings servicing trucks.

¶5 In 1990, McFerran injured his back while picking up the front-end of a dolly. He was out of work as a result of that injury for nearly two years. The company accepted liability for the injury and McFerran received workers' compensation benefits while he was out of work. McFerran returned to work in 1992, and continued to work in "heavy-duty lifting areas."

¶6 In 1997 McFerran suffered a groin injury at work while loading tires. McFerran was unable to return to work for another two months. In January 1998, he suffered another groin injury and then, a knee strain two days later. His employer referred him to Dr.

Donald Grewell as a primary physician. Dr. Grewell prohibited McFerran from returning to heavy- duty work and Consolidated refused to accommodate a light duty work restriction. Consolidated believed that any job it could offer would put McFerran at risk of additional injury. Soon after, he resigned in order to ensure receipt of his Teamsters health insurance and benefits. He also applied for and received Social Security disability benefits.

¶7 In his petition to the Workers' Compensation Court, McFerran sought a determination that he is permanently totally disabled. Consolidated hired Juanita Hooper Addy, a certified vocational consultant to assess McFerran's employability. Although Addy found five job possibilities for McFerran, his doctors approved only three of them for the court's consideration: a part-time pharmacy driver position, newspaper deliveryman, and bookmobile driver.

¶8 After considering all three job descriptions, the Court concluded that both the newspaper delivery job and the bookmobile driver position did not meet the statutory requirements of regular employment. It held, however, that, the part-time pharmacy driver position, was "regular employment" and, therefore, the Court held that McFerran did not qualify for permanent total disability benefits.

## DISCUSSION

## ISSUE ONE

¶9 Did the Workers' Compensation Court err when it concluded that McFerran was not totally disabled because he could perform duties of a part-time pharmacy delivery driver?

¶10 The findings of fact of the Workers' Compensation Court will be upheld if they are supported by substantial credible evidence. *Wunderlich v. Lumbermens Mut. Cas. Co.* (1995), 270 Mont. 404, 408, 892 P.2d 563, 566. Our standard of review of a Workers' Compensation Court's conclusions of law is whether the court's interpretation of the law was correct. *Stordalen v. Ricci's Food Farm* (1993), 261 Mont. 256, 258, 862 P.2d 393, 394.

¶11 The Workers' Compensation Court found that the claimant had "reasonable prospect of physically performing" three of the jobs identified by Addy. The issue is whether any of the three were "regular employment" pursuant to § 39-71-116(24). The court concluded that only the part-time pharmacy delivery job met that requirement. McFerran appeals that

conclusion. Consolidated has not cross-appealed the Workers' Compensation Court's Findings or Conclusions.

¶12 The Workers' Compensation Court relied on § 39-71-701, MCA (1997) which provides that "[i]f a worker is no longer temporarily totally disabled and is permanently totally disabled, as defined by 39-71-116, MCA (1997), the worker is eligible for permanent total disability benefits." Permanent total disability is defined as:

> [A] physical condition resulting from injury as defined in this chapter, after a worker reaches maximum medical healing, in which a worker does not have a reasonable prospect of physically performing *regular employment*. Regular employment means work on a recurring basis performed for remuneration in a trade, business, profession, or other occupation in this state. Lack of immediate job openings is not a factor to be considered in determining if a worker is permanently totally disabled.

Section 39-71-116(24), MCA (1997).

¶13 The court concluded that regular employment did not mean any job but one that the Claimant was qualified for both physically and vocationally and that "regular employment encompasses part-time employment, at least where that employment is substantial and significant." The court concluded that the other two jobs did not amount to "regular employment" but that the pharmacy job provided up to six hours of daily work and, therefore, was substantial and significant enough to be considered "regular employment."

¶14 We conclude that the Workers' Compensation Court's analysis of what constitutes regular employment for purposes of the statutory definition of permanent total disability is correct. If a particular job is both substantial and significant, then that job would constitute regular employment, regardless of whether the position was part-time or full-time. However, we conclude that the Workers' Compensation Court erred when it concluded that the part-time pharmacy job is substantial and significant.

¶15 McFerran contends, and we agree, that this is an inaccurate characterization of the pharmacy driver position. Although Addy testified at trial that the position provided anywhere from two to six hours of employment per day, the written documentation on which she based her testimony is less optimistic. According to the Western Pharmacy Job Analysis prepared by Addy, the work shift is listed as "1:30-4:30 work hours." In the

General Comments section of the analysis, it additionally states that the "work hours range from one to four hours, six days a week . . . ." The same report describes the work shift as 1 to 4 hours. Accordingly, based on information provided by the employer the hours per week range from 6 to 24. The pharmacy driver position pays $5.50 an hour, for a weekly range of $33.00 to $132.00 of income. Annually, assuming 52 weeks of employment, the income would range from $1716.00 to $6864.00. The Federal Poverty level for the year 2000 for a family of three is $14,150.00.[1] Furthermore, the job does not guarantee any minimum number of hours. Addy testified that the job depends on the amount of deliveries to be made each day.

¶16 The Workers' Compensation Court did not reach the issue of whether these hours constituted regular employment because the lower court estimated 30 to 36 hours of work per week. It further commented that the Court "need not determine whether minimal or trivial employment such as 1, 5 or 10 hours a week, or even something more than that, would constitute regular employment since in this case the evidence is that the part-time pharmacy drivers work up to 6 hours a day which is substantial and significant."

¶17 With no assurance of more than one hour of work each day, we conclude that this job is not substantial and significant, and therefore does not amount to "regular employment."

¶18 Because no other forms of regular employment exist for McFerran, we conclude that the Workers' Compensation Court erred when it concluded that he is not permanently, totally disabled.

¶19 The judgment of the Workers' Compensation Court is reversed and this case is remanded for entry of judgment for the Claimant, John McFerran.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

1. 2000 Federal Poverty Level, 65 Fed. Reg. 3, 7555-57 (2000).