No. 02-553

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 72

WILLIAMS INSULATION COMPANY, INC.,

        Plaintiff and Appellant,

   v.

DEPARTMENT OF LABOR AND INDUSTRY,
UNINSURED EMPLOYERS' FUND,

        Respondent and Respondent.

APPEAL FROM:    Workers' Compensation Court, Cause No. WCC 2001-0473
                     Honorable Mike McCarter, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                John C. Doubek, Small, Hatch, Doubek & Pyfer, Helena, Montana

        For Respondent:

                Charles K. Hail, Special Assistant Attorney General, Department of
                Labor and Industry, Helena, Montana

                           Submitted on Briefs:  January 16, 2003

                                  Decided:  April 8, 2003

Filed:

                            _____

                                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Williams Insulation Company, Inc., appeals the Workers' Compensation Court's decision upholding a penalty of $94,484.86 assessed by the Department of Labor and Industry. We affirm.

¶2 The sole issue on appeal is: Whether the Workers' Compensation Court erred in upholding the penalty?

### Factual and Procedural Background

¶3 Williams Insulation Company, Inc. (Williams), is a Wyoming corporation with its principal business office located in Wyoming and has been qualified to do business in Montana since 1994. In 1996 through the beginning of 2000, Williams purchased workers' compensation insurance from the State of Wyoming, paying a premium calculated based upon Williams' entire payroll, including its employees who worked outside of Wyoming. Williams never purchased workers' compensation insurance from the State of Montana for its employees working primarily in Montana because, based on its purchase of insurance in Wyoming, Williams believed that it had valid workers' compensation coverage for all of its employees.

¶4 In February 2000, Williams hired Thomas Fugare in Wyoming as an employee, and initially sent him to Billings, Montana, to work for Williams at the Conoco refinery. Williams regularly provided services at the refinery, signing a separate contract with Conoco to provide the services each time. Pursuant to those contracts, Williams was responsible for

obtaining and providing workers' compensation insurance coverage to its employees at the refinery.

¶5 On February 23, 2000, Fugare told Williams he had injured his left elbow on the job that day. He continued to work for Williams in Montana. The crew with whom Fugare worked moved to a job site in Great Falls, Montana. On April 10, Fugare reported a repetition of the injury that he had first reported in Billings in February. That same month, before returning to Wyoming, Fugare had surgery on his left elbow.

¶6 Williams received a copy of a letter dated April 19, 2000, from the North Dakota Workers' Compensation Bureau to the Montana Department of Labor and Industry (DOL) regarding workers' compensation coverage. The letter certified that Williams had coverage in North Dakota, but the letter also noted that, should Williams hire workers in Montana, it was "understood" that Williams would purchase Montana coverage for those workers. As a result of the letter, and its inquiries regarding Montana coverage, Williams petitioned the DOL for extraterritorial reciprocity under its Wyoming policy.

¶7 After returning to Wyoming, Fugare filed a Wyoming claim for occupational injury regarding his left elbow, alleging the injury occurred within the course and scope of his employment at a job site in Montana. The Wyoming State Department of Employment denied Fugare's claim on two bases: first, Fugare had not timely filed his claim of injury; and second, Fugare had been hired to work primarily in a state other than Wyoming and, therefore, the Wyoming workers' compensation coverage did not extend to Fugare.

3

¶8      On May 8, 2000, the DOL rejected Williams' petition for extraterritorial reciprocity, advising Williams that Montana, by law, did not offer reciprocity to companies performing construction work in Montana. Williams then purchased Montana workers' compensation insurance from the State Fund for its workers performing services within Montana, effective June 27, 2000, approximately four months after Fugare's injury. On August 15, 2000, the DOL's Uninsured Employer's Fund (UEF) received a claim of work-related injury from Fugare, in which he alleged the same injury.

¶9      On August 21, 2000, the UEF sent a written request for payroll information to Williams, noting that: (1) there were no records to indicate that Williams had workers' compensation insurance covering its employees working in Montana from 1997 to 2000; (2) the UEF had documented that Williams had employees working within Montana for a number of years; and (3) Williams had not registered as a contractor performing work within Montana. Based on Williams' reported Montana payroll from June 26, 1997 to June 26, 2000, the UEF calculated and assessed to Williams a penalty of $94,484.86.

¶10     In October 2000, the UEF notified Williams of the penalty and informed the company that it could request an administrative review. Later that month, the comptroller at Williams, Annie Humphrey, wrote a letter requesting that the UEF drop the penalty because Williams had relied in good faith upon payment of Wyoming premiums and upon Wyoming certifications of coverage for workers in Montana. In the alternative, Humphrey's letter requested that the UEF at least reconsider the penalty. Finally, Humphrey requested the UEF give notice of the time and place of reconsideration so the company could participate.

4

¶11 On November 14, 2000, the UEF informed Williams that the Administrative Review Panel had completed its review and had sustained the original penalty assessment. The UEF, however, had not notified Williams of the time and place of the administrative review as Humphrey's letter had requested. On November 14, 2000, the UEF made a telephonic offer to Williams to accept either 100 percent of the premium if paid in full or 125 percent of the premium if paid in timely installments. Williams responded with a request to repeat administrative review, with an opportunity to participate; the UEF refused.

¶12 In December 2000, Williams filed a notice for contested case proceedings pursuant to Rule 24.29.207, ARM. However, instead of proceeding with an actual hearing, Williams and DOL agreed to submit the case to a DOL Hearings Officer upon their briefs and documents on file with the DOL. In November 2001, the Hearings Officer issued "Findings of Facts, Conclusions of Law and Order" affirming the penalty. Williams appealed the Hearings Officer's decision to the Workers' Compensation Court, which also upheld the penalty. Williams filed this timely appeal of the Workers' Compensation Court's judgment.

Standard of Review

¶13 Our standard of review of a Workers' Compensation Court's conclusions of law is whether the court's interpretation of the law was correct. *McFerran v. Consolidated Freightways*, 2000 MT 365, ¶ 10, 303 Mont. 393, ¶ 10, 15 P.3d 935, ¶ 10; *Stordalen v. Ricci's Food Farm* (1993), 261 Mont. 256, 258, 862 P.2d 393, 394.

5

## Discussion

¶14     Section 39-71-504(1)(a), MCA (1997), authorizes the Montana Department of Labor to assess a penalty against an uninsured employer of up to double the premiums the employer would have paid on the payroll of the employer's Montana workers had it been enrolled with the State Fund, or $200, whichever is greater. The sum of the penalty at issue is $ 94,484.86, double the amount DOL calculated that Williams would have paid in premiums to the State Fund for workers' compensation coverage from 1997 to 2000.

¶15     The objective of Montana Workers' Compensation system is "to provide, without regard to fault, wage supplement and medical benefits to a worker suffering from a work-related injury or disease." Section 39-71-105(1), MCA. Generally, workers' compensation coverage purchased in another state will enjoy extraterritorial application and reciprocity in Montana. *See* § 39-71-402, MCA. There is an exception to this, however, in the case of employers from another state engaged in the construction industry. Section 39-71-402(5), MCA, provides that: "[e]mployers from another state that are engaged in the construction industry, . . . and that employ workers from another state shall obtain coverage for those workers under the provisions of this chapter."

¶16     The Workers' Compensation Court (WCC) noted that, although Williams had purchased insurance in Wyoming, Williams was not entitled to reciprocity because it was engaged in the construction industry. Thus, the WCC concluded that Williams was not insured in Montana as required by § 39-71-402(5), MCA, and upheld the penalty imposed by the DOL.

¶17 Williams contends that the WCC erroneously applied subsection (5) of § 39-71-402, MCA, and that the court should have applied subsection (2) instead. We agree with Williams that subsection (2) is controlling of this situation. However, application of subsection (2) does not inure to Williams' benefit. Section 39-71-402(2), MCA, provides:

> Except as provided in subsection (5), if a worker from another state and the worker's employer from another state are temporarily engaged in work within this state, this chapter does not apply to them if: the employer and employee are bound by the provisions of the worker's compensation law or similar law of the other state that applies to them while they are in the state of Montana; (b) if the Workers' Compensation Act of this state is recognized and given effect as the exclusive remedy for workers employed in this state who are injured while temporarily employed in the other state. [Emphasis added.]

When subsections (2) and (5) are read together, the law requires that, with the exception of employers engaged in the construction industry, an out-of-state employer does not have to purchase coverage in Montana if it has out-of-state coverage that applies to its employees while in Montana. A construction industry employer, however, would not get the benefit of any reciprocity under subsection (2), but would have to maintain coverage in Montana irrespective of any out-of-state coverage. *See* § 39-71-402(5), MCA.

¶18 Williams argues that it is unfair to require it to maintain coverage on its Montana workers in both Wyoming and Montana; that the Wyoming coverage is sufficient. Its arguments, however, are premised on the false assumption that Williams had Wyoming coverage for its Montana employees. It did not. Although Williams did purchase insurance for Fugare and his coworkers in Wyoming, this insurance did not apply to them while they were in Montana. This is because Wyoming workers' compensation laws mandate that the employment be localized in Wyoming for its provisions to apply. *See* Wyo. Stat. Ann. § 27-

7

14-301. As noted by the Wyoming Department of Employment in its denial of coverage of Fugare's claims, Wyoming workers' compensation law and insurance did not apply to Fugare because his employment with Williams was localized outside of Wyoming. Consequently, neither Williams nor its employees working outside of Wyoming were "bound by the provisions of [Wyoming's] workers' compensation law" because its workers' compensation laws did not apply to Williams' employees while they were working in the State of Montana as required by § 39-71-402(2), MCA. Therefore, Williams did not have workers' compensation coverage for its employees, including Fugare, who worked primarily in Montana. Since Williams did not satisfy the prerequisite for reciprocity under subsection (2), it was required to obtain Montana coverage and is subject to the penalty provisions of § 39-71-504, MCA, for failing to do so. Since Williams had neither Montana nor Wyoming coverage, subsection (2) is dispositive, and we need not address Williams' arguments that subsection (5) is unconstitutional for failing to grant full faith and credit to Wyoming's workers' compensation protections and for denying reciprocity to employers in the construction industry in violation of the equal protection clause.

¶19 Next, Williams contends that it was denied its due process rights under the Montana and United States Constitutions because the DOL did not allow the company to participate in, nor notify it of, the time and place of the administrative review. Rule 24.29.206, ARM, provides that:

> (1) The department [DOL] shall conduct an administrative review of a department order, requested pursuant to ARM 24.29.205(3)(a), for the purpose of resolving the case and avoiding an unnecessary hearing upon: . . . (2) An

8

administrative review caused by a petition pursuant to 24.29.206(1) includes: (a) at the discretion of the petitioner, an informal conference with the department by telephone or in person at the department office in Helena. . . .

¶20    The DOL recognizes that, assuming Humphrey's letter constitutes a petition pursuant to Rule 24.29.206(1)(a), ARM, Williams should have been afforded an opportunity for an informal conference, either by phone or in person, with the DOL prior to the administrative review panel's decision.  The DOL argues, however, that any infringement of due process is *de minimus* because Williams has not offered any new evidence or substantive argument beyond those found in Humphrey's letter, which was considered by the review panel.  Moreover, the DOL maintains that any infringement has been cured by contested case procedure and judicial review.

¶21    First, we address the DOL's argument that any infringement of due process has been cured by contested case procedure.  In support of its argument, the DOL underscores the following undisputed facts: after the UEF refused Williams a second informal administrative review of the penalty, Williams filed for a contested case hearing under Rule 24.29.207, ARM.  Subsequently, both the DOL and Williams agreed to waive the hearing and submit the case on briefs to a Hearings Officer.  Thus, even though Williams did not receive an informal conference with the DOL by telephone or in person at its office prior to the administrative review panel's decision, as authorized by Rule 24.29.206(2)(a), ARM, Williams subsequently waived its right to a contested case hearing under Rule 24.29.207, ARM, in favor of submitting the case on briefs.  Therefore, Williams' claim that the DOL

9

denied the company due process rings hollow in light of the fact that the company itself waived its right to a contested case hearing following the panel's decision.

¶22    Next, we turn to the DOL's argument that any due process infringement in this case has been cured by judicial review. It is well established that the requirements of due process apply to administrative agencies such as the DOL. *See Schneeman v. State Dept. of Labor & Industry* (1993), 257 Mont. 254, 259, 848 P.2d 504, 507; *Montana Power Co. v. Public Serv. Comm'n* (1983), 206 Mont. 359, 368, 671 P.2d 604, 609. Where judicial review is accorded to a particular order made or agreed upon by an administrative agency, such as the DOL, there is no denial of due process. *Schneeman*, 257 Mont. at 259, 848 P.2d at 507. Although a court reviewing an agency's decision "may not substitute its judgment for that of the agency as to the weight of the evidence on the question of fact," the court may reverse or modify the administrative agency's decision if it determines that the agency's conclusions of law are, among other things, in violation of constitutional or statutory provisions or affected by other error of law. *See* § 2-4-704(2), MCA. The standard of review of a state agency's conclusions of law is to determine whether the agency's interpretation of the law is correct. *See Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474, 803 P.2d 601, 603. Here, there were no factual disputes. Williams waived its right to an evidentiary hearing, submitted the case on briefs and then, in its notice of appeal, challenged the conclusion of law, alleging the examiner erred in determining that Williams owed the UEF the penalty. The availability of judicial review of the UEF's conclusion of law, not only by

10

the WCC, but by this Court, mandates our determination that Williams has not been denied due process.

¶23     In conclusion, because Williams, in violation of § 39-71-401, MCA, did not carry workers' compensation coverage for employees in Montana and was not entitled to reciprocity under § 39-71-402(2), MCA, the WCC correctly upheld the penalty.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER
/S/ JIM RICE